2018 PA Super 46

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHEILA MARIE LEWIS | : | |
| | : | |
| Appellant | : | No. 257 MDA 2017 |

Appeal from the Judgment of Sentence January 27, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0005227-2016

BEFORE: GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

OPINION BY PANELLA, J.                    **FILED MARCH 02, 2018**

In this appeal, we interpret and apply the Drug Overdose Response Immunity statute, 35 P.S. § 780-113.7 (the "Act"). In an effort to prevent overdose deaths, the Legislature provided for immunity from prosecution for certain crimes when a person has a reasonable belief someone is suffering from an overdose and contacts local authorities. The Act provides this immunity to both the reporter and the victim, so long as several conditions are met.

At issue here is whether the statute applies to a person who reasonably believed she herself had overdosed and contacted authorities pursuant to this belief. We conclude that while the language of the statute does not explicitly provide for immunity under these circumstances, denying Lewis immunity in this case would frustrate the Legislature's intent in

passing the Act. We therefore reverse the trial court's order finding that Appellant, Sheila Marie Lewis, is not entitled to immunity.

For purposes of this appeal, the facts of the case are undisputed. Lewis called 911 from her hotel room reporting she had overdosed on prescription pills. A police officer responded to the scene to assist Lewis until an ambulance could arrive. While he was assisting Lewis in gathering the prescription pills, he observed paraphernalia often utilized to smoke marijuana. When questioned about the paraphernalia, Lewis admitted she had used the items to smoke marijuana.

The ambulance took Lewis to a local hospital. The Commonwealth subsequently charged her with possession of drug paraphernalia. Prior to her bench trial, Lewis moved to have the charge dismissed, claiming immunity to prosecution under the Act. The trial court denied her motion on two grounds.

The court concluded self-reported overdose victims are not entitled to immunity under the law. In addition, the court held Lewis did not need immediate medical attention and therefore was not entitled to immunity under the law. After hearing testimony, the court found Lewis guilty of possession of drug paraphernalia and sentenced her to three months' probation. Lewis filed this timely appeal.

Lewis argues the trial court erred in concluding she is not statutorily immune from prosecution under the Act. As she concedes in her brief, this

issue raises a question of statutory interpretation. "A trial court's application of a statute is a question of law, and our standard of review is plenary. Moreover, our review is limited to determining whether the trial court committed an error of law." ***Commonwealth v. Wall***, 867 A.2d 578, 580 (Pa. Super. 2005) (citations and internal quotation marks omitted).

> In interpreting any statute, appellate courts must take note of the principles of statutory interpretation and construction. The principal objective of interpreting a statute is to effectuate the intention of the legislature and give effect to all of the provisions of the statute. In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. When analyzing particular words or phrases, we must construe them according to rules of grammar and according to their common and approved usage. Words of a statute are to be considered in their grammatical context. Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute. A presumption also exists that the legislature placed every word, sentence and provision in the statute for some purpose and therefore courts must give effect to every word.

***Commonwealth v. Morris***, 958 A.2d 569, 578-579 (Pa. Super. 2008) (internal citations and quotation marks omitted).

Lewis's claim relies solely on the Act.[1] The Legislature amended the Controlled Substance, Drug, Device and Cosmetic Act by enacting the Drug

---

[1] The relevant language of the Act:

(a)    A person may not be charged and shall be immune from prosecution for any offense listed in subsection (b) and for

*(Footnote Continued Next Page)*

- 3 -

Overdose Response Immunity statute. The amendment passed in the face of a burgeoning humanitarian crisis across the United States in general and Pennsylvania in particular. In the United States as a whole, drug overdose deaths "nearly tripled during 1999-2014." Rudd RA, Seth P, David F, Scholl L., *Increases in Drug and Opioid-Involved Overdose Deaths — United States,*

*(Footnote Continued)* ——————————

> a violation of probation or parole if the person can establish the following:
>
> …
>
> (1)    all of the following apply:
>    (i) the person reported, in good faith, a drug overdose event to a law enforcement officer, the 911 system, a campus security officer or emergency services personnel and the report was made on the reasonable belief that another person was in need of immediate medical attention and was necessary to prevent death or serious bodily injury due to a drug overdose;
>    (ii) the person provided his own name and location and cooperated with the law enforcement officer, 911 system, campus security officer or emergency services personnel; and
>    (iii) the person remained with the person needing immediate medical attention until a law enforcement officer, a campus security officer or emergency services personnel arrived.
> (b)   The prohibition on charging or prosecuting a person as described in subsection (a) bars charging or prosecuting a person for [a list of crimes including possession of drug paraphernalia.]
> (c)   Persons experiencing drug overdose events may not be charged and shall be immune from prosecution as provided in subsection (b) if a person who transported or reported and remained with them may not be charged and is entitled to immunity under this section.

35 P.S. § 780-113.7.

*2010–2015*. MMWR Morb Mortal Wkly Rep 2016; 65:1445–1452, available at https://www.cdc.gov/mmwr/volumes/65/wr/mm655051e1.htm?s_cid=mm6 55051e1_w, retrieved 1/23/18. From 1999 to 2010, Pennsylvania's rate nearly doubled. ***See*** *Prescription Drug Abuse: Strategies to Stop the Epidemic*, available at http://healthyamericans.org/reports/drugabuse2013/, retrieved 1/23/18. As of 2010, Pennsylvania's drug overdose mortality rate was 14th highest in the country. ***See id***. After signing the Act into law, then-Governor Tom Corbett observed, "[t]he bill I am signing today will save lives and ensure those who help someone in need aren't punished for doing so." Pa. Painkiller-Heroin Crisis: Corbett Signs Bill Intended to Save Lives, available at http://www.pennlive.com/midstate/index.ssf/2014/09/corbett_heroin_good_ samaritan.html, retrieved 1/23/18.

This public health crisis continues unabated. In fact, "[m]ore than 63,600 lives were lost to drug overdose in 2016, the most lethal year yet of the drug overdose epidemic, according to … the US Centers for Disease Control and Prevention." Opioids Now Kill More People Than Breast Cancer, available at http://www.wfmz.com/health/opioids-now-kill-more-people-than-breast-cancer/675807470, retrieved 2/21/18.

To achieve its intent of saving lives, the Act provides immunity from prosecution for persons who call authorities to seek medical care for a suspected overdose victim. Specifically, the Commonwealth may not

prosecute either the caller or the victim for minor narcotics infractions. This immunity cannot be used to defeat prosecutions for ongoing investigations. For instance, a person cannot gain immunity by calling 911 and reporting a suspected overdose while police are knocking on the door to serve a search warrant.

Furthermore, immunity is only granted when the reporter *reasonably* believes medical attention is necessary. This requirement would further restrict the ability of a defendant to utilize a timely 911 call to frustrate an ongoing investigation. Other conditions on the grant of immunity include a requirement that the reporter provide authorities with her real name, that she stay with the subject of her report, and she cooperate fully with authorities.

Under the appropriate circumstances, the reporter is rendered immune from prosecution for minor drug offenses enumerated in the Act, including possession of drug paraphernalia. Additionally, the suspected overdose victim is granted immunity so long as the reporter has met all the conditions necessary for immunity. **See Commonwealth v. Carontenuto**, 148 A.3d 448, 452 (Pa. Super. 2016). The suspected victim is granted immunity even if authorities have no reason to believe the reporter committed any crime. **See id**., at 452-453.

Thus, the Act is designed to save lives by sacrificing the enforcement of minor narcotics criminal penalties. However, as noted, it does not

frustrate larger law enforcement goals. For example, if a narcotics distribution operation were the subject of an extended investigation, the suspects would not receive immunity if they called 911 while police were in the process of entering the building. **See** 35 P.S. § 780-113.7(d)(1). Furthermore, even if police were completely unaware of the narcotics distribution operation, and were summoned to treat an overdose, there would be no immunity granted for distribution charges, firearms charges, or any other serious crime not explicitly listed in the Act. **See** 35 P.S. § 780-113.7(d)(2). Thus, the Act in no way constitutes an impediment to the prosecution of organized criminal behavior.

As the learned trial judge noted in announcing his verdict, application of the Act to this fact pattern is not straightforward. The esteemed trial judge chose a strict construction in interpreting the statute. In light of our standard of review, we believe our broader interpretation is in line with the Legislature's clear intent in enacting this statute.

As referenced above, the Act repeatedly refers to the presence of a third party, the reporter, in setting forth the conditions for immunity. For example, the Act states the reporter must be acting under a reasonable belief that "another person" is in need of immediate medical assistance. **See** 35 P.S. § 780-113.7(a)(2)(i). Thus, the Act appears to implicitly condition the grant of immunity on the presence of two parties: a reporter and a victim.

However, it is unclear this implicit requirement was intended. The Act does not explicitly exclude immunity for self-reporters. Furthermore, excluding self-reporters from the immunity granted by the Act would lead to absurd results. Using the facts of this case as an example, we could hold that Lewis was not immune because she self-reported and affirm her conviction. However, if she had summoned anyone else—a neighbor, or passerby, for instance—to phone the police for her, it is clear she would qualify for immunity under the Act.

We do not believe the Legislature intended this absurd dichotomy in results. "The legislature does not intend a result that is absurd and unreasonable." *Bankers Trust Co. v. Foust*, 621 A.2d 1054, 1058 (Pa. Super. 1993) (citation omitted). *See also Koken v. Reliance Ins. Co.*, 893 A.2d 70, 81 (Pa. 2006); 1 Pa.C.S.A. § 1922(1). We cannot believe the Legislature intended to weigh the life of a self-reporter below the life of a drug overdose victim who has a conscientious associate. Whether a life is worth saving should not depend on the presence of a third party. We therefore conclude the immunities granted under the Act are available to self-reporters, so long as they meet all other requirements.

Which leads to the second basis for the trial court's refusal to grant Lewis immunity under the facts of this case. The court found Lewis was not "in need of immediate medical attention … necessary to prevent death or

serious bodily injury due to a drug overdose event." Trial Court Opinion, filed 2/28/17, at 4 (emphasis and footnote omitted).

However, this standard is not the standard set forth in the Act. The Act requires the reporter to have "a *reasonable belief* that another person was in need of immediate medical attention and was necessary to prevent death or serious bodily injury due to a drug overdose[.]" 35 P.S. § 780-113.7(a)(2)(i) (emphasis supplied). Thus, the subject of the report need not necessarily require immediate medical attention, or even be suffering from a drug overdose. What the Act requires is that the reporter have a reasonable belief emergency medical care is required due to a drug overdose.

Initially, the reasonableness of Lewis's belief is bolstered by the fact she called 911 to request aid. There is no evidence Lewis had a motive to call 911 outside of a desire to seek immediate medical attention. Furthermore, the only testimony at trial came from the officer who responded to Lewis's 911 call. He testified the responding ambulance crew took Lewis to the hospital, over her protests. *See* N.T., Bench Trial, 1/27/17, at 16-17. He agreed this was done "because they wanted to make sure that whatever she ingested didn't eventually kill her or harm her[.]" *Id*., at 17. Thus, the Commonwealth presented evidence that the responding ambulance crew believed Lewis was in need of immediate medical care to prevent death or serious harm. On this record, we cannot conclude Lewis's belief was unreasonable.

We therefore reverse the judgment of sentence.

Judgment of sentence reversed. Appellant discharged.

President Judge Emeritus Ford Elliott joins the opinion.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/2/18