J-A25030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOUGLAS R. FEHR | : | No. 457 MDA 2019 |

Appeal from the Order Dated February 15, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0003087-2018

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:           **FILED FEBRUARY 18, 2020**

The Commonwealth appeals from an order granting Douglas R. Fehr's motion to dismiss his charges pursuant to the Drug Overdose Response Immunity statute, 35 P.S. § 780-113.7 ("Overdose Immunity Statute"). We conclude that the statute does not afford Fehr immunity in this case. We therefore reverse the order dismissing the charges and remand for further proceedings.

The Commonwealth charged Fehr in April 2018 with possession of a controlled substance, possession of drug paraphernalia, and public drunkenness.[1] **See** Information, filed 7/31/18. Fehr moved to dismiss the charges, citing the Overdose Immunity Statute. At a hearing on the motion, Officer Sean Engelman testified that he encountered Fehr while on duty on

_____

[1] 35 P.S. §§ 780-113(a)(16), (a)(32), and 18 Pa.C.S.A. § 5505, respectively.

April 27, 2018. N.T., Pretrial Hearing, 9/28/18, at 3. He said that between 4:30 and 5:00 that morning he was in the parking lot outside of a McDonald's restaurant when two people flagged him down. They informed him that "a male on the opposite side of the building of the McDonald's . . . was walking in and out of traffic. . . . and they said that the male seemed out of it and asked me if I would go investigate." *Id.* at 4. Officer Engelman did not obtain any identifying information from the two, who then left the area. *Id.* at 13. The officer testified that the two individuals did not say that the male was having a medical emergency or that he seemed to be overdosing on drugs. *Id.*

Officer Engelman then drove to the area the individuals had identified and saw Fehr "walking along the curb line in the street." *Id.* at 6. Officer Engelman asked Fehr to come over to his vehicle but Fehr "seem[ed] a little dazed. He was stumbling around in traffic." *Id.* Officer Engelman walked towards Fehr, identified himself as a police officer, and asked Fehr "if he would accompany me back from the parking lot away from the road." *Id.* Fehr did not respond, and Officer Engelman guided him to his patrol car in the parking lot. *Id.* at 6-7. Without any direction from Officer Engelman, Fehr leaned on the hood of the patrol car, at which point Officer Engelman observed a silver spoon and two hypodermic needles sticking out of his top front pocket. *Id.* at 7, 8. Officer Engelman asked Fehr if there was anything else in his pockets but Fehr again did not respond. *Id.* at 8. Officer Engelman conducted a pat down search to make sure Fehr had no other needles in his pockets, and he

- 2 -

found none. *Id.* He then placed Fehr under arrest for possession of drug paraphernalia. *Id.*

Officer Engelman then performed a search incident to arrest and recovered numerous baggies filled with a white powdery substance that field-tested positive for heroin. *Id.* After he placed Fehr in the back of his patrol car, a young girl approached him and said that Fehr was a friend of her mother, who was in the McDonald's. *Id.* at 9, 17. He spoke with the mother who told him that she was in the area to drop Fehr off at a methadone clinic. *Id.* at 10. This conversation lasted about 10 to 15 minutes. *Id.* When Officer Engelman returned to his patrol car, Fehr's "head was kind of leaned back and his mouth was open. He was still not answering any of my questions. At that time that's when I called for an ambulance to have him evaluated." *Id.* Officer Engelman testified that Fehr did not appear to be overdosing but did seem to be under the influence of a narcotic or alcohol. *Id.* at 7.

Officer Engelman testified on cross-examination that he receives yearly training "for releases of Narcan" and identifying people who may be overdosing. *Id.* at 12. He explained that Narcan is used for an active heroin or opiate overdose. *Id.* The training informed him to administer Narcan when the individual "starts making certain noises or gurgling sounds and stops breathing…." *Id.* at 23. A portion of the police incident report that he prepared on the day of the incident was also read into the record. It read, "Fehr was placed in the back of the patrol car and an ambulance was called to the scene

due to the fact that Fehr was going in and out of consciousness from apparent heroin overdose." *Id.* at 19.

At the conclusion of the hearing, the Commonwealth argued that the facts of the case were "just not what was intended to be covered by [the drug overdose] statute." *Id.* at 31. It argued that Fehr failed to carry his burden to establish immunity under subsection 780-113.7(a)(2) because the two individuals reporting Fehr to the officer did not actually or reasonably believe that Fehr was experiencing a drug overdose:

> That is my argument. That in order for there to be immunity the person reporting so these people in this car have to be reporting a drug overdose event and they have to be under the reasonable belief that the person was in need of immediate medical attention to prevent death or serious bodily injury due to a drug overdose event. They have no way of knowing or there is no evidence that there was any belief that when they see this guy walking in traffic that they believed that he is suffering from a drug overdose event.
>
> It is defined for you. I put it in the response that you requested. There is none of that and a[n] acute medical condition and it goes on and on and on, none of that acute – none of that is established here. So I don't believe that they meet the first criteria at all. Certainly they were being good citizens and were reporting the fact that there is a guy walking in traffic but that's it.
>
> He could have been having a mental health episode or just being a jerk, he could have been drunk, he could have been any number of things.

*Id.* at 29.

The prosecution also maintained the Fehr failed to show that the reporters remained at the scene. Defense counsel responded that the evidence

supported the dismissal of all charges because "[Officer Engelman] called the ambulance because my client was going in and out of consciousness from an apparent heroin overdose." *Id.* at 26.

The trial court ultimately granted the motion concluding that the evidence supported all requirements of subsection 780-113.7(a)(2). The court explained, "Under the first requirement . . . this [c]ourt finds that [Fehr] was the subject of a drug overdose event." Findings of Fact and Conclusions of Law, filed 2/15/19, at Conclusions of Law ¶ 8. The court also concluded "[i]n this case, one would reasonably believe that [Fehr] was suffering from a drug overdose and required immediate medical attention." *Id.* at ¶ 9.

The Commonwealth filed this timely appeal and presents a single issue: "Did the trial court err when it concluded that two individuals reported a drug overdose event thus triggering immunity under 35 P.S. § 780-113.7?" Commonwealth's Br. at 4.

This appeal presents a question of statutory interpretation. Our standard of review is *de novo* and our scope of review is plenary. *See Bowling v. Office of Open Records*, 75 A.3d 453, 466 (Pa. 2013). We review for error of law. *Commonwealth v. Lewis*, 180 A.3d 786, 788 (Pa.Super. 2018). Unless the text of a statute is ambiguous, we may not resort to the tools of statutory construction to discern its meaning. Rather, we must apply its unambiguous text. 1 Pa.C.S. § 1921(b); *Commonwealth v. Brown*, 981 A.2d 893, 898 (Pa. 2009).

The Overdose Immunity Statute affords immunity to a person experiencing a "drug overdose event" only if the statute also immunizes a person who reported the event. 35 P.S. § 780-113.7(c).[2] Fehr claims the two individuals who contacted Officer Engelman were immune under Section 780-113.7(a)(2). Subsection (a)(2) provides:

> (a) A person may not be charged and shall be immune from prosecution for any offense listed in subsection (b) and for a violation of probation or parole if the person can establish the following:
>
> ***
>
> (2) all of the following apply:
>
>> (i) the person reported, in good faith, a drug overdose event to a law enforcement officer, the 911 system, a campus security officer or emergency services personnel and the report was made on the reasonable belief that another person was in need of immediate medical attention and was necessary to prevent death or serious bodily injury due to a drug overdose;
>>
>> (ii) the person provided his own name and location and cooperated with the law enforcement officer, 911 system, campus security officer or emergency services personnel; and
>>
>> (iii) the person remained with the person needing immediate medical attention until a law enforcement officer, a campus security officer or emergency services personnel arrived.

---

[2] "Persons experiencing drug overdose events may not be charged and shall be immune from prosecution as provided in subsection (b) if a person who transported or reported and remained with them may not be charged and is entitled to immunity under this section." 35 P.S. § 780-113.7(c).

35 P.S. § 780-113.7(a)(2). The person claiming immunity under the statute bears the burden of proof. *Id.* at § 780-113.7(a).

Fehr thus bore the burden of proving that: 1. the reporters reported a "drug overdose event"[3] to Officer Engelman in good faith and based on the reasonable belief that immediate medical attention was necessary to prevent death or serious bodily injury due to a drug overdose; 2. the reporters provided authorities with their real name and location, and cooperated with the responding authorities; and 3. the reporters remained with him until responding authorities arrived. *See id.* at § 780-113.7(a)(2); *Lewis*, 180 A.3d at 790.

The Commonwealth argues that the statute does not apply here because the two individuals who contacted Officer Engelman did not report a "drug overdose event." *See* Commonwealth's Br. at 12-13. It further maintains that even if Fehr established that element, the reporters did not identify themselves or remain on the scene. *Id.* at 15.

---

[3] "Drug overdose event" is defined as:

> An acute medical condition, including, but not limited to, severe physical illness, coma, mania, hysteria or death, which is the result of consumption or use of one or more controlled substances causing an adverse reaction. A patient's condition shall be deemed to be a drug overdose if a prudent layperson, possessing an average knowledge of medicine and health, would reasonably believe that the condition is in fact a drug overdose and requires immediate medical attention.

35 P.S. § 780-113.7(f).

We must agree with the Commonwealth. Even assuming, *arguendo*, that Fehr established that the reporters contacted Officer Engelman based on their reasonable belief that he was undergoing a "drug overdose event," Fehr did not carry his burden to prove the other required elements. It is undisputed that the reporters did not remain with Fehr until help arrived and did not give their names to Officer Engelman. We thus conclude that here the Overdose Immunity Statute is inapplicable as the reporters would not have been entitled to immunity. We reverse the order granting Fehr's motion to dismiss and remand the case for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/18/2020