J-S33029-20

2020 PA Super 194

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANCIS SOUTH | : | |
| | : | |
| Appellant | : | No. 3237 EDA 2019 |

Appeal from the Judgment of Sentence Entered October 8, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003759-2019

BEFORE: DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY MURRAY, J.: Filed: August 13, 2020

Francis South (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of possession of a controlled substance and possession of drug paraphernalia.[1] We affirm.

The trial court provided a summary of the facts and procedural history of this case:

On March 1, 2019, Lijera (sp) Glass ([] Ms. Glass) was working at McDonald's [Restaurant], located at 1576 Chester Pike, Eddystone, Delaware County. During her shift, Ms. Glass called 911 and [reported that an adult white male was passed out in the restaurant, and during the call, he got up and proceeded to exit the building and stumble through the parking lot.] . . .

As a result of the call, the following dispatch was put out by [the 911 Dispatcher]: "1576 Chester Pike, one five seven six, the Mcdonalds. Ill older white male in the parking lot, wearing a gray

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(16), (a)(32).

coat." Officer Ryan Sweet, while on patrol for the Eddystone Police Department, received the dispatch and drove to the McDonalds.

Upon arrival, Officer Sweet located the individual, later identified as Appellant, outside by the exit, crouched down, nodding in and out of sleep. He made contact with Appellant and asked if he was alright. Appellant did not seem to comprehend what Officer Sweet was saying and just kept telling Officer Sweet that he was about to go home on the bus. When Officer Sweet asked Appellant where he lived, Appellant gave him three different addresses. During their interaction, Officer Sweet observed Appellant's pupils to be constricted and his demeanor to be disoriented; Appellant appeared to be under the influence. Officer Sweet observed an orange syringe and a silver spoon in Appellant's front, left coat pocket, items commonly associated with drug use.

Appellant refused any medical treatment, despite its availability. Officer Sweet placed Appellant into custody and a search incident [to] arrest yielded six, blue wax paper baggies stamped "lightening hit" which were filled with a white powder. The substance contained within the baggies was sent to the lab for testing and positively identified as heroin. Appellant was arrested and charged with [possession of a controlled substance, possession of drug paraphernalia, and public drunkenness.]

On June 20, 2019, Appellant waived his preliminary hearing . . . and all charges were bound over to the [trial court].

On July 19, 2019, a status hearing was held where counsel for Appellant advised that he had filed a Motion to Dismiss Pursuant to 35 P.S. § 780-113.7. Specifically, the [m]otion alleged that Ms. Glass reported a potential overdose to 911, in good faith, on the reasonable belief that Appellant was in need of immediate medical attention in order to prevent his death or serious bodily injury due to a drug overdose, and that she provided her name and location and remained with Appellant until the police arrived; therefore, satisfying the elements of the statute and making Appellant immune from prosecution. The Commonwealth told [the trial court] that it would provide a disc containing the audio recording of the 911 call for its review. In support of his [m]otion, counsel for Appellant attached the Affidavit of Probable Cause, the transcript of the 911 call, the 911

event information[,] and a 911 event chronology. The [m]otion was taken under advisement.

On August 26, 2019, a status hearing was conducted; wherein [the trial c]ourt told the parties that the [m]otion was being denied, placing its reasoning on the record. [] Specifically, [the trial c]ourt explained that, based upon the language of the statute, and the audio/transcript of the call, Ms. Glass did not call 911 because she reasonably believed that Appellant was in need of medical attention in order to prevent death or serious bodily injury due to a drug overdose event; and [] Ms. Glass remained at the location solely because she was working, and more importantly, did not actually remain with Appellant as he was outside, and unattended when Officer Sweet arrived. Counsel for Appellant asked [the trial c]ourt to reconsider denying the [m]otion and to review [**Commonwealth v. Carontenuto**, 148 A.3d 448 (Pa. Super. 2016) and **Commonwealth v. Lewis**, 180 A.3d 786 (Pa. Super. 2018)]. The [c]ourt agreed to do so.

On September 5, 2019, another status hearing was held. [The trial c]ourt told the parties that it was constrained by the strict interpretation of the statute to deny the motion. [The trial c]ourt codified its decision via [o]rder, with the following footnote: "to achieve its interest in saving lives, the act provides immunity from prosecution for persons who call authorities to seek medical care for a suspected overdose victim. Here, the caller did not suspect an overdose; rather, the caller thought it was a syncopal episode, which takes it outside the clear language of the statute." . . .

On October 8, 2019, a stipulated bench trial was conducted wherein the parties agreed to forego testimony and rely upon the Affidavit of Probable Cause [], the Incident Report [], the written record of the CAD report from the 911 call [], the lab results[,] the audio recording of the 911 call [], and the transcript of the 911 call []. [] Based upon the exhibits, [the trial c]ourt entered a verdict of guilty [for possession of a controlled substance and possession of drug paraphernalia]. Appellant was found not guilty of [public drunkenness].

Appellant elected to proceed to immediate sentencing and was sentenced to [an aggregate of 2 years of probation].

On November 6, 2019, counsel for Appellant filed a timely appeal, challenging the denial of Appellant's Motion to Dismiss pursuant to 35 P.S. § 780-113.7.

Trial Court Opinion, 1/10/20, at 1-5 (footnotes and italics omitted). Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents a single issue for our review:

Whether the [trial] court lacked authority to convict and sentence [Appellant], because he was immune from prosecution pursuant to 35 P.S. § 780-113.7 ("Drug Overdose Response Immunity")?

Appellant's Brief at 4 (italics omitted).

Appellant's issue involves the interpretation and application of the Drug Overdose Response Immunity Act (the Act). Our standard of review is well settled:

A trial court's application of a statute is a question of law, and our standard of review is plenary. Moreover, our review is limited to determining whether the trial court committed an error of law. . . . In interpreting any statute, appellate courts must take note of the principles of statutory interpretation and construction. The principal objective of interpreting a statute is to effectuate the intention of the legislature and give effect to all of the provisions of the statute. In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. When analyzing particular words or phrases, we must construe them according to rules of grammar and according to their common and approved usage. Words of a statute are to be considered in their grammatical context. Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute. A presumption also exists that the legislature placed every word, sentence and provision in the statute for some purpose and therefore courts must give effect to every word.

- 4 -

*Commonwealth v. Lewis*, 180 A.3d 786, 788 (Pa. Super. 2018) (citations omitted).

Appellant argues that he was entitled to immunity under the Act because "Ms. Glass called 911 in good faith to report [Appellant's] 'drug overdose event' believing immediate medical attention was necessary to prevent his death or serious bodily injury." Appellant's Brief at 10. Appellant avers that Ms. Glass "cooperated with the 911 Dispatcher, provided her name and location, and remained with [Appellant] until emergency personnel arrived." *Id.* at 10. Accordingly, Appellant asserts that because "Ms. Glass is immune, [Appellant] is entitled to derivative immunity" pursuant to Section 780-113.7(c). *Id.* at 10-11.

In response, the Commonwealth contends that the trial court correctly denied Appellant immunity under the Act because: (1) Appellant failed to prove that Ms. Glass reasonably believed that he was overdosing and needed immediate medical attention to prevent death or serious bodily injury; and (2) Appellant failed to prove that Ms. Glass remained with him until Officer Sweet arrived. Commonwealth's Brief at 6.

"In an effort to prevent overdose deaths, the Legislature provided for immunity from prosecution for certain crimes when a person has a reasonable belief someone is suffering from an overdose and contacts local authorities. The Act provides this immunity to both the reporter and the victim, so long as several conditions are met." *Lewis*, 180 A.3d 786, 787-88 (Pa. Super. 2018).

The Act, in relevant part, provides:

(a) A person may not be charged and shall be immune from prosecution for any offense listed in subsection (b) . . . if the person can establish the following:

> (1) law enforcement officers only became aware of the person's commission of an offense listed in subsection (b) because . . .

> (2) all of the following apply:

>> (i) the person reported, in good faith, a drug overdose event to a law enforcement officer, the 911 system, a campus security officer or emergency services personnel and the report was made on the reasonable belief that another person was in need of immediate medical attention and was necessary to prevent death or serious bodily injury due to a drug overdose;

>> (ii) the person provided his own name and location and cooperated with the law enforcement officer, 911 system, campus security officer or emergency services personnel; and

>> (iii) the person remained with the person needing immediate medical attention until a law enforcement officer, a campus security officer or emergency services personnel arrived.

(b) The prohibition on charging or prosecuting a person as described in subsection (a) bars charging or prosecuting a person . . . for violations of section 13(a)(5), (16), (19), (31), (32), (33) and (37).

(c) Persons experiencing drug overdose events may not be charged and shall be immune from prosecution as provided in subsection (b) if a person who . . . reported and remained with them may not be charged and is entitled to immunity under this section. . . .

35 P.S. § 780-113.7(a), (b), and (c) (footnote omitted).

As defined in Section 780-113.7, a "drug overdose event" is,

[a]n acute medical condition, including, but not limited to, severe physical illness, coma, mania, hysteria or death, which is the result of consumption or use of one or more controlled substances causing an adverse reaction. A patient's condition shall be deemed to be a drug overdose if a prudent layperson, possessing an average knowledge of medicine and health, would reasonably believe that the condition is in fact a drug overdose and requires immediate medical attention.

35 P.S. § 780-113.7. In applying the Act, we have previously held that, "the subject of the report need not necessarily require immediate medical attention, or even be suffering from a drug overdose. What the Act requires is that the reporter have a reasonable belief emergency medical care is required due to a drug overdose." *Lewis*, 180 A.3d at 791. Further, "[t]he burden of proof under the [Act] is not on the Commonwealth; rather, the defendant must establish that he is entitled to immunity under the Act." *Commonwealth v. Lehman*, -- A.3d --, 2020 WL 1671582, *3 (Pa. Super. Apr. 6, 2020) (citing 35 P.S. § 780-113.7(a)).

Upon careful review of the record, we agree with the trial court that Appellant did not qualify for Section 780-113.7(c) immunity because he failed to satisfy the Act's requirements. Specifically, Appellant failed to produce evidence showing that Ms. Glass reasonably believed he was in need of immediate medical attention to prevent death or serious bodily injury due to a drug overdose, and also that Ms. Glass remained with Appellant until Officer Sweet arrived.

At Appellant's stipulated bench trial, no witness testimony was presented. *See* N.T., 10/8/19, at 3-8. Rather, the trial court considered five exhibits submitted by the Commonwealth, and one submitted by Appellant. *Id.* at 6-7. The Commonwealth introduced the affidavit of probable cause, Officer Sweet's incident report, the 911 event log, a Pennsylvania State Police lab report, and a CD containing an audio recording of Ms. Glass's 911 call. *Id.* at 6; *see also* Commonwealth's Exhibit #1-5. Appellant introduced the transcript of Ms. Glass's 911 call. N.T., 10/8/19, at 7; *see also* Appellant's Exhibit #1.

The affidavit of probable cause states:

On March 1, 2019, at approximately 1225[]hrs, I, Officer Ryan Sweet of the Eddystone Police Department was dispatched to 1576 Chester Pike, McDonalds, for the medical emergency. Delcom advised an older white male in a gray coat was outside the store suffering from a syncopal episode. Upon arrival to the area, I found the male, later identified as [Appellant] at the exit crouched down, nodding in and out of sleep. I then made contact with [Appellant] and asked if he was alright, to which he seemed to not comprehend and kept saying he was just about to go home via bus. When I asked him where he lived, he gave me three different addresses. While speaking with [Appellant], I observed his pupils to be constricted and he appeared disoriented, having a hard time standing under his own power and appeared to be under the influence of narcotics. I also observed an orange syringe and silver spoon in his front left coat pocket, items commonly used as paraphernalia for drug use. Ambulance and medics were on scene and [Appellant] refused any medical treatment.

At this time, [Appellant] was placed into custody. Search incident to arrest yielded six blue wax paper baggies stamped "lightening hit" filled with a white powder, which was later tested and showed positive reaction for heroin/fentanyl. [Appellant] was transported to Ridley Township, where he was processed and held for

arraignment. The suspected heroin will be sent to PSP labs for further analysis. . . .

Affidavit of Probable Cause, 3/1/19, at 1.[2]

In her 911 call, Ms. Glass stated:

(first transcription)

911 Dispatcher: Police and fire, ambulance 153.

Ms. Glass: I'm sorry. I'm at Eddystone McDonald's, 1576 Chester Pike. I have a older male with a gray hoodie - I'm sorry - a gray coat. It kind of look like, I can't really say, and it's like a gray hat. He passed out in here but he just got up. He's about to leave but I'm not sure if I should let him leave.

911 Dispatcher: Okay. Yeah, we can send somebody out.

Ms. Glass: Okay. Thank you. He's still kind of stumbling in the parking lot out front.

911 Dispatcher: Is he white, black, Hispanic?

Ms. Glass: He's white, Caucasian.

911 Dispatcher: Is he getting into a car?

Ms. Glass: No, it don't look like he is getting into a car.

911 Dispatcher: Okay. What is your name? What is your name, ma'am?

Ms. Glass: Lijera (ph) Glass.

911 Dispatcher: What is your phone number you're calling from?

Ms. Glass: [Provides phone number she called from].

911 Dispatcher: Okay. All right. We'll send an ambulance over.

---

[2] Officer Sweet's June 26, 2019 incident report contains an identical narrative of the events of March 1, 2019. *See* Commonwealth's Exhibit #2.

Ms. Glass:  All right.  Thank you.

911 Dispatcher:  You're welcome.

(Second transcription)

911 Dispatcher:  DelCOMM number 23.

Male Voice:  Check.

911 Dispatcher: 1 576 Chester Pike, one five seven six, the McDonald's.  Dispatcher ill older white male in the parking lot, wearing a gray coat.

Male Voice:  Check.

(Third transcription)

911 Dispatcher: 3240 DelCOMM.  Out at 123 East Glenolden.

Male Voice: Okay.

911 Dispatcher: Out of McDonald's, 3324 83 of Chester Pike.

Appellant's Exhibit #1, at 3-4.

To qualify for immunity, it was Appellant's burden to show that Ms. Glass reasonably believed he required emergency medical care **due to a drug overdose**.  35 P.S. § 780-113.7(2)(i); *Lewis*, 180 A.3d at 791.  We agree with the trial court's conclusion that there was no evidence submitted at Appellant's trial "which would support that Ms. Glass, as the reporter, had any reasonable belief that Appellant was in need of immediate medical attention to prevent death or serious bodily injury from a drug overdose."  Trial Court Opinion, 1/10/20, at 8.

Ms. Glass made no mention during her 911 call that she suspected Appellant was suffering adverse reactions from the consumption of one or more controlled substances. *See* Appellant's Exhibit #1, at 3-4; *see also* 35 P.S. § 780-113.7. Rather, Ms. Glass only reported to the dispatcher that Appellant "passed out" inside the McDonalds, and that he was "stumbling in the parking lot out front." *Id.* at 3. While it is apparent Ms. Glass was concerned for Appellant's wellbeing and actively sought out medical attention for him, nothing submitted by either party indicates that Ms. Glass believed his condition was due to a drug overdose. Therefore, Appellant failed to meet his burden under the Act.

Moreover, Appellant also failed to prove that Ms. Glass remained with him until Officer Sweet arrived, as required by Section 780-113.7(2)(iii). The transcript of Ms. Glass's 911 call evidences that while she had apprehensions about letting Appellant exit the restaurant, Ms. Glass ultimately let Appellant leave, did not pursue him, and instead, watched him stumble through the parking lot from inside the restaurant. Appellant's Exhibit #1, at 3. This is further corroborated by the affidavit of probable cause, in which Officer Sweet stated that upon arriving at the McDonald's, he found Appellant outside the exit "crouched down, nodding in and out of sleep." Commonwealth's Exhibit #1, at 1. Thus, the trial court properly concluded that Appellant failed to satisfy his burden of proof that Ms. Glass remained with him until Officer Sweet arrived. *See* Trial Court Opinion, 1/10/20, at 9.

In sum, the trial court properly denied Appellant's motion to dismiss because it correctly determined Appellant did not qualify for immunity under the Act. We therefore affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/20