J-S33019-20

2020 PA Super 198

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    : PENNSYLVANIA
                                    :
            v.                      :
                                    :
                                    :
                                    :
OBED NUNEZ,                         :
                                    :
            Appellant               : No. 3308 EDA 2019

Appeal from the Judgment of Sentence Entered October 18, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0000114-2019

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS, P.J.E.*

OPINION BY MURRAY, J.:                          **FILED AUGUST 14, 2020**

Obed Nunez (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of possession of a controlled substance and possession of drug paraphernalia.[1]  We affirm.

The trial court summarized the facts and procedural history of this case:

On Monday, September 10, 2018, at approximately 4:00[]p.m., [Upper Darby Police Department Officer Michael Begany (Officer Begany)] was working as a patrolman in full uniform and in a marked police vehicle.  Officer Begany received a dispatch call for a "customer disturbance" at the Taco Bell [Restaurant] on 7500 West Chester Pike in Upper Darby. . . .

Officer [Michael] Wilson of the Upper Darby Police Department also responded to the call.  Before the two arrived, the manager called back a second time, stating that they needed help with an intoxicated or high customer who had now passed out.  When Officer Wilson and Officer Begany arrived at the Taco

---

* Former Justice specially assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(16), (a)(32).

Bell, they observed an [unconscious] male, later identified as Appellant, on the floor in the bathroom of the restaurant. Based upon his training and experience with opioids, Officer Begany determined that Appellant was overdosing on opioids and Narcan was administered. After receiving the Narcan, [Appellant] regained some amount of consciousness.

As the paramedics were in route, Officer Begany and Officer Wilson prepared [] Appellant for transport, which routinely includes checking for identification as well as searching [] Appellant in order to make sure there are no dangerous objects such as weapons or needles that could injure the paramedics or the officers. As a result of the search, a glassine baggy with white powder was located in Appellant's right, front pocket.

Appellant was eventually arrested and charged with [p]ossession of a [c]ontrolled [s]ubstance and [p]ossesion of [d]rug [p]araphernalia.

On June 13, 2019, counsel for Appellant filed a Motion to Dismiss pursuant to 35 P.S. § 780-113 as well as a Motion to Suppress. A hearing was conducted on the Motion to Dismiss on July 8, 2019. . . . After review of the audio of the 911 calls and the applicable case[]law, [the trial court] issued an order denying the motion on July 9, 2019. Counsel filed a Motion to Reconsider which was denied on August 26, 2019. [Following a hearing, Appellant's motion to suppress was denied on July 26, 2019.]

On October 18, 2019, a non-jury trial was conducted. In lieu of testimony, counsel for the Commonwealth and counsel for Appellant agreed to a trial by stipulation and entered the following exhibits into evidence: [Commonwealth's Exhibit #1]: Affidavit of Probable Cause; [Commonwealth's Exhibit #2]: Incident Report; [Commonwealth's Exhibit #3]: CD containing audio of the 911 calls; [Commonwealth's Exhibit #4: the 911 event log]; [Commonwealth's Exhibit #5]: Lab Report; as well as the notes of testimony from the suppression hearing, which were not transcribed at the time of the non-jury trial, but was agreed upon by both parties that they would be incorporated into the record when they became available. After review of the exhibits, [the trial court] found Appellant guilty of [p]ossesion of a [c]ontrolled substance and [p]ossession of [d]rug [p]araphernalia.

[The trial court sentenced Appellant to an aggregate of 3 years of probation.] Appellant filed a timely appeal[.]

Trial Court Opinion, 1/16/20, at 2-5 (footnotes and italics omitted). Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents a single issue for review: "Whether the [trial] court lacked authority to convict and sentence [Appellant], because he was immune from prosecution pursuant to 35 P.S. § 780-113.7 . . . ?" Appellant's Brief at 4 (italics omitted).[2]

Appellant's issue involves the interpretation and application of the Drug Overdose Response Immunity Act (the Act). Our standard of review is well settled:

> A trial court's application of a statute is a question of law, and our standard of review is plenary. Moreover, our review is limited to determining whether the trial court committed an error of law. . . . In interpreting any statute, appellate courts must take note of the principles of statutory interpretation and construction. The principal objective of interpreting a statute is to effectuate the intention of the legislature and give effect to all of the provisions of the statute. In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. When analyzing particular words or phrases, we must construe them according to rules of grammar and according to their common and approved usage. Words of a statute are to be considered in their

---

[2] Appellant's Rule 1925(b) statement raises an additional suppression claim. *See* Rule 1925(b) Statement, 11/27/19, at 1. However, because Appellant abandoned this claim in his brief, we will not address it. *See* Appellant's Brief at 4; *see also Commonwealth v. Briggs*, 12 A.3d 291, 310 n.19 (Pa. 2011), *cert. denied*, 132 S.Ct. 267 (2011) (refusing to address claim appellant raised with trial court but subsequently abandoned in brief).

- 3 -

grammatical context. Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute. A presumption also exists that the legislature placed every word, sentence and provision in the statute for some purpose and therefore courts must give effect to every word.

***Commonwealth v. Lewis***, 180 A.3d 786, 788 (Pa. Super. 2018) (citations omitted).

Appellant argues that he was entitled to immunity under the Act because the Taco Bell restaurant manager, William Jay (Mr. Jay), "reported in good faith a 'drug overdose event' to 911 believing immediate medical attention was necessary to prevent death or serious bodily injury." Appellant's Brief at 8. Appellant avers that Mr. Jay "cooperated with authorities, provided his name and location, and remained with [Appellant] until emergency personnel arrived at Taco Bell." ***Id.*** Accordingly, Appellant asserts that because Mr. Jay is immune, Appellant is entitled to derivative immunity pursuant to Section 780-113.7(c). ***Id.***

In response, the Commonwealth contends:

> The [Act] does not apply to the facts of this case because [Appellant] failed to prove that [Mr. Jay] reasonably believed that [Appellant] was overdosing and needed immediate medical attention to prevent death or serious bodily injury. The trial court found that [Mr. Jay] called 911 to remove the uncooperative [Appellant], not to provide him with medical attention. As the trial court accurately and succinctly summarized, the 911 call was made out of concern for the business; not out of concern for Appellant's well-being.
>
> The [Act] does not grant blanket immunity to everyone who overdoses. The plain language of the statute provides the conditions that must be met for the statute to apply and the trial court correctly found that these conditions were not present.

Commonwealth's Brief at 6 (citation omitted).

"In an effort to prevent overdose deaths, the Legislature provided for immunity from prosecution for certain crimes when a person has a reasonable belief someone is suffering from an overdose and contacts local authorities. The Act provides this immunity to both the reporter and the victim, so long as several conditions are met." **Lewis**, 180 A.3d 786, 787-88 (Pa. Super. 2018).

The Act, in relevant part, provides:

(a) A person may not be charged and shall be immune from prosecution for any offense listed in subsection (b) . . . if the person can establish the following:

(1) law enforcement officers only became aware of the person's commission of an offense listed in subsection (b) because . . .

(2) all of the following apply:

(i) the person reported, in good faith, a drug overdose event to a law enforcement officer, the 911 system, a campus security officer or emergency services personnel and the report was made on the reasonable belief that another person was in need of immediate medical attention and was necessary to prevent death or serious bodily injury due to a drug overdose;

(ii) the person provided his own name and location and cooperated with the law enforcement officer, 911 system, campus security officer or emergency services personnel; and

(iii) the person remained with the person needing immediate medical attention until

a law enforcement officer, a campus security officer or emergency services personnel arrived.

(b) The prohibition on charging or prosecuting a person as described in subsection (a) bars charging or prosecuting a person . . . for violations of section 13(a)(5), (16), (19), (31), (32), (33) and (37).

**(c) Persons experiencing drug overdose events may not be charged and shall be immune from prosecution as provided in subsection (b) if a person who . . . reported and remained with them may not be charged and is entitled to immunity under this section.**

(d) The prohibition on charging or prosecuting a person as described in this section is limited in the following respects:

(1) This section may not bar charging or prosecuting a person for offenses enumerated in subsection (b) if a law enforcement officer obtains information prior to or independent of the action of seeking or obtaining emergency assistance as described in subsection (a). . . .

35 P.S. § 780-113.7(a)-(d) (footnote omitted, emphasis added).

As defined in Section 780-113.7, a "drug overdose event" is,

[a]n acute medical condition, including, but not limited to, severe physical illness, coma, mania, hysteria or death, which is the result of consumption or use of one or more controlled substances causing an adverse reaction. A patient's condition shall be deemed to be a drug overdose if a prudent layperson, possessing an average knowledge of medicine and health, would reasonably believe that the condition is in fact a drug overdose and requires immediate medical attention.

35 P.S. § 780-113.7. In applying the Act, we have previously held that, "the subject of the report need not necessarily require immediate medical attention, or even be suffering from a drug overdose. What the Act requires

is that the reporter have a reasonable belief emergency medical care is required due to a drug overdose." **Lewis**, 180 A.3d at 791. Further, "[t]he burden of proof under the [Act] is not on the Commonwealth; rather, the defendant must establish that he is entitled to immunity under the Act." **Commonwealth v. Lehman**, -- A.3d --, 2020 WL 1671582, *3 (Pa. Super. Apr. 6, 2020) (citing 35 P.S. § 780-113.7(a)).

Upon review of the record, we agree with the trial court that Appellant did not qualify for Section 780-113.7(c) immunity because he failed to satisfy the Act's requirements. Specifically, we conclude Mr. Jay's 911 calls did not evidence that he held a reasonable belief Appellant was in need of immediate medical attention necessary to prevent death or serious bodily injury due to a drug overdose. **See** 35 P.S. § 780-113.7(a)(2)(i). Further, Appellant also failed to prove that Mr. Jay remained with him until the police officers arrived. **See** 35 P.S. § 780-113.7(a)(2)(iii).

At Appellant's stipulated bench trial, no witness testimony was presented. N.T., 10/18/19, at 1-19. Instead, the trial court considered five exhibits submitted by the Commonwealth: the affidavit of probable cause, Officer Wilson's incident report, an audio recording of Mr. Jay's 911 calls, the 911 event log, and a Pennsylvania State Police lab report. **Id.** at 6-7; **see also** Commonwealth's Exhibit #1-5. Appellant did not submit any evidence for the trial court's consideration. N.T., 10/18/19, at 7 ("[Appellant will] not be presenting any testimony or evidence.").

The affidavit of probable cause states:

On Monday September 10th, 2018 at 15:59 hours your Affiant, Officer Michael Wilson #80 of the Upper Darby Township Police Department, was on duty, working in full uniform, and operating marked patrol vehicle 79-23. During my course of duty I was dispatched to the Taco Bell located at 7500 West Chester Pike, Upper Darby, PA, 19082 for the report of a customer dispute in progress. While en route DELCOM advised that a male inside of the store was now unconscious. Upon entering the store I located [Appellant] being held up on a chair by Taco Bell employees. [Appellant] was unresponsive and appeared to be overdosing on narcotics. Myself and Officer Michael Begany [#137] placed [Appellant] flat on the ground, and I administered (1) 4mg dose of Naloxone through his nostril. During a search of [Appellant] for officer safety, Officer Begany located (1)[] clear, glassine bag containing (1) blue wax paper bag stamped "White House" which contained a white powdery substance, suspected to be heroin, in [Appellant's] right front pants pocket. [Appellant] did eventually regain consciousness, however due to his intoxicated state he was transported by paramedics to Delaware County Memorial Hospital. At police headquarters the suspected heroin was field tested using the NARKII (Heroin/Fentanyl Reagent) test kit, which produced positive results for the presence of Fentanyl. . . .

Affidavit of Probable Cause, 9/10/18, at 1.[3]

In his initial 911 call, Mr. Jay stated:

([] 3:59:18 [p.m.])

Dispatcher: The time is 9-1.

[Mr. Jay]: Oh, yeah. Can I have, I'm at the Taco Bell in Upper Darby. Can I have an escort across the —

Dispatcher: O kay. You're at Taco Bell. Where are you going to?

[Mr. Jay]: No. I need, a customer, actually he's extremely high.

---

[3] Officer Wilson's incident report contains an identical narrative of the events of September 10, 2018. *See* Commonwealth's Exhibit #2.

Dispatcher:  Which Taco Bell you at, sir?

[Mr. Jay]:  That one on West Chester Pike. (Noise)

Dispatcher: Is he a white male, black male, [H]ispanic?

[Mr. Jay]: He's a white male.

Dispatcher:  White male.  What color shirt? What color pants?

[Mr. Jay]:  He's got on a gray hoodie and black, purple and white sweat pants.

Dispatcher: Black, purple and white sweat pants? (Noise)

[Mr. Jay]: Yes, he's staying right in the lobby. (Noise) . . . He's asleep standing up.  Sir.

Dispatcher:  Is he a customer?

[Mr. Jay]:  Yes. (Noise)

Dispatcher:  Your name, sir?

[Mr. Jay]:  I'm a manager.  My name is Will[.]

Dispatcher:  What's your last name?

[Mr. Jay]:  It's Jay, J-a-y.

Dispatcher:  And your phone number?

[Mr. Jay]:  You got to get up.  I'm sorry.

Dispatcher:  Your phone number, sir?

[Mr. Jay]:  [Provides phone number].

Dispatcher:  All right.  They already have the call.

[Mr. Jay]:  I'm sorry.

Dispatcher: They have the call, sir.

[Mr. Jay]: All right. Thank you.

(Conclusion of the 911 call.)

Appellant's Motion for Reconsideration, 7/23/19, Exhibit A, at 3-4.

As stated above, to qualify for immunity, Appellant bore the burden of proving that: 1) the reporter reported a "drug overdose event" to Officer Begany and Officer Wilson in good faith and based upon the reasonable belief that immediate medical attention was necessary to prevent death or serious bodily injury due to a drug overdose; 2) the reporter provided authorities with their real name and location, and cooperated with the responding authorities; and 3) the reporter remained with Appellant until responding authorities arrived. 35 P.S. § 780-113.7(a)(2); *Lewis*, 180 A.3d at 791.

During Mr. Jay's initial 911 call, he stated to the dispatcher that Appellant was "extremely high" and "asleep standing up" in the middle of the Taco Bell restaurant lobby. Appellant's Motion for Reconsideration, 7/23/19, Exhibit A, at 3-4. However, Mr. Jay did not make any statement during this call that he reasonably believed Appellant required immediate medical attention, *see id.,* nor did Mr. Jay relay to the dispatcher that he reasonably believed Appellant was experiencing a drug overdose event, as defined by the Act. *See id.*; *see also* 35 P.S. § 780-113.7. Rather, our review of the record reveals that the trial court correctly characterized Mr. Jay's first 911 call as "a manager of an establishment contacting the police for assistance in removing

an individual who, by his intoxicated nature, [was] causing a disturbance to the regular course of business." Trial Court Opinion, 1/16/20, at 8.

Prior to Officer Begany and Officer Wilson's arrival, Mr. Jay made a second call to 911:

[(]911 call at 4:04:02 p.m.)

Dispatcher: -- police and firemen.

[Mr. Jay]: How you doing? This is the Upper Darby Taco Bell on West Chester Pike, and we have a man who is highly intoxicated or high. He's in our store passed out. Can we have some assistance or help over here, please.

Dispatcher: All right. He's at the one on State and West Chester Pike?

[Mr. Jay]: West Chester Pike, yes. 7500 West Chester Pike.

Dispatcher: Okay. Is a white, black or Hispanic male?

[Mr. Jay]: Excuse me?

Dispatcher: Is he a white, black or Hispanic male?

[Mr. Jay]: He's a white male.

Dispatcher: What's he wearing?

[Mr. Jay]: He's got on a gray hoodie and some black, purple and white sweats, an eye patch.

Dispatcher: Okay. Is he unconscious now?

[Mr. Jay]: Yes.

(End of 911 call.)

Appellant's Motion for Reconsideration, 7/23/19, Exhibit A, at 5-6.

While Mr. Jay's second 911 call could arguably qualify under the Act as a report of a drug overdose event requiring immediate medical attention necessary to prevent death or serious bodily injury, because Officer Wilson had already obtained information concerning Appellant prior to Mr. Jay's second 911 call, Appellant is not entitled to immunity. **_See_** Affidavit of Probable Cause, 9/10/18, at 1; Commonwealth's Exhibit #2; Commonwealth's Exhibit #4; **_see also_** 35 P.S. § 780-113.7(d)(1) ("This section may not bar charging or prosecuting a person for offenses enumerated in subsection (b) if a law enforcement officer obtains information prior to . . . the action seeking or obtaining emergency assistance as described in subsection (a).").

Simply, based upon Mr. Jay's initial 911 call, Officer Wilson was already in route to the Taco Bell to remove a customer asleep in the lobby before receiving additional information, via Mr. Jay's second 911 call, that Appellant had become unconscious and needed help. **_See_** Affidavit of Probable Cause, 9/10/18, at 1 ("I was dispatched to the Taco Bell . . . for the report of a customer dispute. . . . While en route DELCOM advised that a male inside of the store was unconscious."); **_see also_** Commonwealth's Exhibit #2. The Act specifically withholds immunity in this instance. **_See_** 35 P.S. § 780-113.7(d)(1).

Moreover, Appellant failed to prove that Mr. Jay remained with Appellant until the officers arrived at the Taco Bell, as required by Section 780-113.7(a)(2)(iii) ("[T]he person remained with the person needing immediate medical attention until a law enforcement officer . . . arrived."). Officer Wilson

noted in both the affidavit of probable cause and in his incident report that upon arriving at the Taco Bell, he observed Appellant "being held up on a chair by Taco Bell employees."  Affidavit of Probable Cause, 9/10/18, at 1; **See** Commonwealth's Exhibit #2.  However, there is no evidence of record specifically indicating that Mr. Jay, as the reporter under the Act, remained with Appellant until the officers arrived, as required for immunity.[4]  Neither the affidavit of probable cause, nor Officer Wilson's incident report reflect that Mr. Jay was found present with Appellant upon the officers' arrival, and Appellant did not present any evidence proving so.  Appellant therefore failed to satisfy his burden under Section 780-113.7(a)(2)(iii).  **Lewis**, 180 A.3d at 791.

In sum, because Appellant did not qualify for immunity under the Act, the trial court properly denied Appellant's motion to dismiss.  We therefore affirm his judgment of sentence.

Judgment of sentence affirmed.

---

[4]  Notably, Appellant concedes in his motion to dismiss pursuant to 35 P.S. § 780-113.7 that the "record is vague" concerning Mr. Jay's involvement, but ultimately avers that "the facts and circumstances suggest that an employee phoning the police would provide police with his name and remain at the scene throughout the investigation."  Appellant's Motion to Dismiss Pursuant to 35 P.S. § 780-113.7, 6/13/19, at unnumbered 2.  However, we hold that "suggestive facts and circumstances" fail to carry Appellant's burden of showing he was entitled to immunity under the Act.  **See** 35 P.S. § 780-113.7.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/14/20</u>