2023 PA Super 267

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MINDYN LYNN MARMILLION | : | |
| | : | |
| Appellant | : | No. 99 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 13, 2022
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000367-2021

BEFORE: PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, P.J.:                    **FILED: DECEMBER 13, 2023**

Mindyn MarMillion appeals the judgment of sentence imposed by the Bradford County Court of Common Pleas after it found Marmillion guilty of delivery of a controlled substance, possession of a controlled substance, and recklessly endangering another person ("REAP") following a bench trial. The convictions stemmed from an incident at the Best Western Hotel in Sayre, Pennsylvania on January 10, 2021, which resulted in the death of Ashley Richardson from a drug overdose. Although Marmillion was also charged with several offenses requiring a showing that Marmillion had caused Richardson's death, including third-degree murder and drug delivery resulting in death, the

---

[*] Former Justice specially assigned to the Superior Court.

trial court dismissed those counts at the close of the Commonwealth's case in chief.

On appeal, Marmillion raises five issues. She claims the trial court improperly convicted her of delivery of a controlled substance for several reasons: because the court omitted rendering the guilty verdict for that particular offense in open court at the end of trial; because a guilty verdict for the delivery charge made the verdict generally inconsistent; and because the evidence was insufficient to support the delivery conviction. She also argues she was entitled to immunity under the Drug Overdose Response Immunity Act, 35 P.S. § 780-113.7, and that the trial court should have merged the possession of a controlled substance conviction with the delivery of a controlled substance conviction for sentencing purposes. As we find no error on the part of the trial court, we affirm the judgment of sentence.

Marmillion and Richard Gordon were staying in Room 224 at the Best Western Hotel in Sayre. On January 10, 2021, the two were doing drugs in the hotel room when Gordon contacted a drug dealer, Robert Benjamin III, in search of the drug MDMA or "Molly." Benjamin came to the hotel room with two other women, Richardson and her friend, Dawn Anderson. Benjamin brought drugs with him, which turned out to be Eutylone, a synthetic stimulant that is a common substitute for Molly, and sold the drugs to Gordon.

The parties continued to do a variety of drugs in the hotel room. There is no dispute that Richardson voluntarily ingested what she thought was Molly,

actually Eutylone, in the hotel room. At some point, Richardson told Anderson she did not feel well and wanted to take a bath. After bathing, Richardson fell to the floor and began seizing. The trial court summarized what happened next:

> Although the sequence of events is not clear, at some point the other people in the room, including [Marmillion] took steps to try to help [Richardson] by performing CPR and holding her wrists and legs to keep her from flailing around. During this time, Marmillion temporarily placed a bandana around [Richardson's] head and in or across her mouth to keep her from making noise and, presumably, to prevent her from clenching her teeth and biting her tongue. Eventually, after the passage of perhaps [ ] 30 minutes, somebody in the room called 911.

Trial Court Opinion, 1/3/2023, at 3 (citations to notes of testimony omitted).

Officer Casey Shiposh of the Sayre Borough Police Department and emergency medical technicians ("EMT") arrived at the hotel room and saw a female attempting to perform CPR on Richardson, who was not breathing and did not have a pulse. Officer Shiposh and then the EMTs performed CPR on Richardson. The EMTs also gave Richardson epinephrine and Narcan, but they were unable to resuscitate her. Richardson died at the scene.

Dr. Robert Stoppacher performed the autopsy on Richardson. Blood tests revealed that Richardson had, among other things, fentanyl, eutylone, xylazine and methamphetamine in her system. Dr. Stoppacher attributed the death to mixed drug toxicity from these drugs and classified her death as accidental.

Several months later, a cellmate of Marmillion's at Bradley County jail informed police that Marmillion told her Marmillion had shot fentanyl up Richardson's nose while she was seizing on the hotel floor. Upon investigation, Anderson confirmed this. This new information led Dr. Stoppacher to amend the autopsy report and classify Richardson's death as a homicide, although the cause of death remained the mixed drug toxicity of the drugs in Richardson's system.

Marmillion was charged with third-degree murder, drug delivery resulting in death, involuntary manslaughter, aggravated assault, REAP, delivery of a controlled substance and possession of a controlled substance. The matter proceeded to trial, and Marmillion waived her right to a jury trial.

The Commonwealth began its case by playing a recording of the 911 call that was made on January 10, 2021, which consisted of a female caller imploring Richardson to wake up and telling the dispatcher that Richardson had started seizing, was not breathing and that people in the hotel room were attempting CPR. **See** N.T., 4/22/2023, at 11-26. The caller identified herself as Anderson. **See id.** at 18.

Anderson also testified at trial. She stated that she and Richardson had been "partying" for a few days prior to January 10. **See id.** at 50. She confirmed she went to the Best Western hotel room on January 10 with Richardson and Benjamin, who was also her drug dealer. She stated she and Richardson were snorting Molly (again, later confirmed to be eutylone) that

she had bought from Benjamin, and that Richardson was doing so entirely voluntarily. *See id.* at 56-57.

Anderson testified that after Richardson starting seizing, Marmillion got a syringe and shot a liquid up Richardson's nose. *See id.* at 50. According to Anderson, Richardson started gagging, so Marmillion took handkerchiefs and shoved them in Richardson's mouth and duct-taped her mouth, which she then removed after Richardson vomited. *See id.* at 51.

Anderson testified Gordon called 911. *See id.* at 52, 58. Gordon then handed Anderson the phone, and Anderson spoke on the phone with the 911 dispatcher. *See id.* at 52. Anderson testified that Marmilion did not call or talk to the 911 dispatcher but agreed Marmillion had attempted to perform CPR on Richardson. *See id.* at 58-59.

Anderson stated she did not learn that the substance Marmillion injected into Richardson's nose was fentanyl until months later, when she was at Bradford County jail with Marmillion and Marmillion told other inmates she had shot fentanyl up Richardson's nose. *See id.* at 51. Anderson testified she did not initially tell the police about Anderson plunging the syringe up Richardson's nose because she was "high and in shock" after her friend's death. *See id.* at 67-68.

Randi Williams also testified. She explained she was Marmillion's cellmate at Bradford County jail. During that time, Williams maintained, Marmillion told her about the incident with Richardson and shared she had tied

a bandana around Richardson's mouth to try to quiet her down and had shot fentanyl up her nose. *See id.* at 82. According to Williams, Marmillion talked about the case and the fentanyl to several inmates at the jail. *See id.* at 88.

Gordon also testified, stating he had called Benjamin and asked him for Molly, which Benjamin brought to the hotel room on January 10. He maintained Richardson was smoking Molly and K2. *See id.* at 104. After Richardson starting seizing, Gordon said Benjamin injected a syringe into Richardson's nose. *See id.* at 102. He then saw Marmillion inject a syringe into Richardson's nose with what Richardson later believed could have been water. *See id.* at 104-105, 107, 120. Gordon stated Marmillion used fentanyl "all the time" and he assumed she was using fentanyl in the hotel room on the night in question. *See id.* at 106, 110-111.

The Commonwealth presented the expert testimony of Dr. Stoppacher and Donna Papsun, the toxicologist who had analyzed Richardson's blood. The defense, meanwhile, presented the expert medical testimony of Dr. William Cox while the Commonwealth's case-in-chief was ongoing. The trial court summarized the expert testimony in some detail but we highlight the trial court's observations that Dr. Cox testified that he was of the opinion that the eutylone was the primary factor in Richardson's death; in contrast, Papsun testified there were potentially lethal amounts of both eutylone and fentanyl in Richard's blood. *See* Trial Court Opinion, 1/3/2023, at 4-5. Papsun stated she could not "pin the death on, pin the toxicology just on the eutylone, to the

exclusion of the fentanyl," and the levels of the drugs in Richardson's system were such that she believed Richardson could have died from either. ***See id.*** at 5 (citations to notes of testimony omitted). Similarly, Dr. Stoppacher opined that the fentanyl could not be discounted as contributing to Richardson's death but he could not state with scientific certainty which drug actually caused Richardson's death. ***See id.*** at 6-7.

Following the expert testimony, the Commonwealth presented the testimony of Officer Shiposh. The officer testified the police found, among other things, hypodermic needles, stamp baggies of presumed heroin or fentanyl, containers with purported marijuana and a meth pipe in the hotel room. ***See*** N.T 4/21/2022, at 11-28. The police also recovered drugs on Marmillion's person, which were tested and confirmed to be, *inter alia*, eutylone, heroin and fentanyl. ***See id.*** at 29-30.

The Commonwealth rested its case at the close of the officer's testimony. At that point, Marmillion moved for dismissal on several of the charges, including the third-degree murder, delivery resulting in death and involuntary manslaughter charges, on the basis of insufficient evidence. Marmillion argued the Commonwealth had not met its burden of proving Marmillion caused Richardson's death because it had not established whether the eutylone, which Richardson took voluntarily, or the fentanyl, which had been administered intranasally, had killed Richardson.

The trial court agreed. The trial court found the Commonwealth had established that Marmillion administered fentanyl to Richardson intranasally, albeit in "an ill-advised attempt to reverse the effects of the eutylone," and that there had been no evidence that Richardson had otherwise ingested fentanyl. Trial Court Opinion, 1/3/2023, at 5 n.2, 8. However, the court also found the Commonwealth had not established that the fentanyl, as opposed to the eutylone, which Richardson ingested voluntarily, had caused Richardson's death.

In making this determination, the court noted it could only consider the testimony of the two Commonwealth expert witnesses because Dr. Cox was a defense witness and had testified out of order. When considering the Commonwealth's experts' testimony, the court stated that the only thing that was certain about the cause of Richardson's death was that the experts "could not say with any certainty at all that the fentanyl caused the death. That was one thing that was very clear. I can say with no certainty at all that the fentanyl caused the death." **See** N.T., 4/21/2022, at 83. It therefore dismissed the three charges related to Marmilion's administration of the fentanyl as the cause of Richardson's death: third-degree murder, drug delivery resulting in death and involuntary manslaughter.

The defense rested its case at that point. The trial court then addressed the remaining charges against Marmillion and stated on the record that it had found Marmillion guilty of REAP and possession of a controlled substance but

not guilty of the other charges. Court was adjourned. Approximately two hours later, the trial court had an on-the-record conversation with the prosecutor and defense counsel:

> I owe you both an apology because I made what I view as a pretty big oversight in saying the – the verdict. .. As I was dictating the order of what transpired and I listed the three charges that I found [Marmillion] guilty of, I had a flashback and thought, "I don't think I said she was guilty of delivery." … [T]here's no change in my mind here. This was just an oversight. She will be found and is guilty of the delivery, of [REAP] and of the possession… It's kind of essential that she be guilty of [the delivery of a controlled substance charge] to go along with the [REAP] charge. It just wouldn't make any sense. .. The order that goes down will simply say that she is guilty of [possession, REAP and delivery of a controlled substance].

*Id.* at 102.

The written order and verdict did, in fact, state that Marmillion had been found guilty of delivery of a controlled substance, REAP and possession of a controlled substance. The order made a note that the court had inadvertently omitted the finding of guilty for the delivery charge in open court at the end of trial but upon realizing its mistake shortly thereafter, notified counsel of the mistake and its intent to find Marmillion guilty of the delivery charge. The order also explained that it had partially granted Marmillion's motion for dismissal as to all counts that required the Commonwealth to prove Marmillion caused the death of Richardson, reasoning that neither of the Commonwealth medical experts were able to testify that the fentanyl caused Richardson's death to the exclusion of the eutylone.

The trial court held a sentencing hearing, after which it sentenced Marmillion to two to eight years' imprisonment for the delivery of a controlled substance conviction, 11 months to two years' incarceration for the REAP conviction, and four months to one year for the possession conviction. The court ordered the sentences to run consecutively, so that Richardson's aggregate sentence amounted to three and three months to 11 years' imprisonment.

Marmillion filed a timely post-sentence motion on June 17, 2022. The trial court held a hearing on the motion on August 24, 2022, and established a briefing schedule for the parties. The trial court ultimately denied the motion, but not until January 3, 2023. Along with its order, the trial court issued a thoughtful and well-reasoned opinion explaining its reasons for denying the post-sentence motion.

Marmillion filed a notice of appeal on January 13, 2023, and complied with the trial court's order directing her to file a Pa. R.A.P. 1925(b) statement of errors complained of on appeal. Her statement read:

1. Did the Trial Court err in failing to grant her Judgment of Acquittal on Delivery of a Controlled Substance pursuant to 35 P.S. § 780-113(A)(30)?

2. Did the Trial Court err in failing to grant [Marmillion's] Motion and Arrest for Judgment under the Drug Overdose Response Immunity Act?

3. Did the Trial Court err in failing to grant the merger of Possession of a Controlled Substance and Delivery of a Controlled Substance?

Concise Statement of Errors Complained of on Appeal, 1/25/2023, at 1-2.

The trial court filed a statement in lieu of a Rule 1925(a) opinion, referring this Court to its January 3, 2023, opinion as support for affirming the judgment of sentence.

Before proceeding to the issues Marmillion raises on appeal, we must determine whether the procedural posture of the case divests this Court of jurisdiction because of an untimely-filed notice of appeal. **See Commonwealth v. Burks**, 102 A.3d 497, 500 (Pa. Super. 2014) (stating this Court lacks jurisdiction over untimely appeals and we may raise such jurisdictional issues *sua sponte*). Marmillion filed her post-sentence motion on June 17, 2022, and the trial court had 120 days, or until October 17, 2022, to decide the motion, or else the motion would be deemed denied by operation of law. **See** Pa.R.Crim.P. 720 (B)(3)(a).

However, the trial court did not rule on Marmillion's motion until January 3, 2023, which was clearly outside the 120-day window. Under our rules of criminal procedure, the post-sentence motion should have been deemed denied by operation of law at the expiration of the 120-day period, October 17, 2022, and the clerk of courts should have entered an order denying the motion at that time and served that order on the parties. **See** Pa.R.Crim.P. 720(B)(3)(c). Marmillion would then have had 30 days from the entry of that order denying the post-sentence motion in which to timely file her notice of appeal. **See** Pa.R.Crim.P. 720 (A)(2)(b).

- 11 -

The clerk of courts, however, did not enter an order deeming the post-sentence motion denied by operation of law on October 17, 2022. Instead, the trial court ruled on the post-sentence motion on January 3, 2023, and Marmillion appealed from that order on January 13, 2023. Although these circumstances implicate the timeliness of Marmillion's appeal, we have declined to quash an appeal for untimeliness in similar circumstances. In **Commonwealth v. Perry**, we noted this Court has held that "where the clerk of courts does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances." 820 A.2d 734, 735 (Pa. Super. 2003) (citations omitted). We therefore decline to quash Marmillion's appeal and proceed to the substantive issues raised by Marmillion in this appeal:

1. Did the trial court err in changing its verdict from not guilty to guilty after open court concluded on the Delivery charge?

2. Did the trial court err in convicting [Marmillion] of a delivery charge?

3. Did the trial court err when it failed to acknowledge [Marmillion] was entitled to relief under the Drug Overdose Response [Immunity] Act?

4. Did the trial court err in denying [Marmillion's] Post-Sentence Motion?

5. Did the trial court fail to merge Possession of a Controlled Substance with Delivery of a Controlled Substance?

Appellant's Brief at 2-3 (suggested answers omitted).

In her first issue, Marmillion complains the trial court erred by finding her guilty of delivery of a controlled substance in its written verdict after it failed to announce a guilty verdict for that offense when announcing its verdict in open court at the end of trial. She maintains this amounted to the trial court improperly reconsidering the verdict, and improperly changing its mind about the verdict as a result of that reconsideration. This claim warrants no relief.

In the first instance, we question whether Marmillion sufficiently raised this issue in her Rule 1925(b) statement. There, as noted above, Marmillion only raised a general claim that the trial court improperly failed to grant her judgment of acquittal on the delivery of a controlled substance charge. She did not allude in any way to any change in the verdict as being the basis for this claim. It is arguably waived for this reason. **See** Pa. R.A.P. 1925(b)(4)(ii), (vii).

Even if not waived, the claim fails on the merits. In support of her argument, Marmillion relies on **Commonwealth v. Parker**, 451 A.2d 767 (Pa. Super. 1982) and **Commonwealth v. Farinella**, 887 A.2d 273 (Pa. Super. 2005). However, these cases are easily distinguishable.

In **Parker**, the trial court, at the close of what had been a bench trial, found Parker guilty of robbery and possession of an instrument of crime and entered an order so stating. Parker did not file any post-verdict motions. However, 14 days after the verdict had been entered, the court issued an order stating that, upon reconsideration of the facts presented at trial, the

court was changing the verdict for both offenses to not guilty. ***See Parker***, 451 A.2d at 520. The Commonwealth appealed, and this Court found the court's attempt to change an already docketed verdict after a *sua sponte* reconsideration of the facts produced at trial exceeded the trial court's post-verdict authority. ***See id.*** at 524.

In ***Farinella***, meanwhile, the trial court announced a verdict of guilty of aggravated assault at the conclusion of a bench trial. At sentencing, however, the court changed the verdict to not guilty of aggravated assault. The court stated that prior to sentencing, it had reviewed the notes of testimony from trial and that this review had led it to conclude it had erroneously found Farinella guilty of aggravated assault. ***Farinella***, 887 A.2d at 275. This Court found the trial court had no basis for changing the verdict, and in so finding, noted that passages in the trial court's opinion supported "the proposition that the court was not merely correcting an erroneous announcement of a verdict but rather, [improperly] rethought its verdict while preparing for sentencing and substituted a new verdict." ***Id.*** at 275 n3.

The trial court's written verdict and opinion, as well as the record, reflect the exact opposite here. The court specifically stated it was not reconsidering the verdict but rather, was correcting an erroneous announcement of its verdict at the end of trial. In both ***Parker*** and ***Farinella***, the trial court clearly rendered the verdict it intended, reconsidered that verdict days later and changed the verdict based on that reconsideration. That is not what happened

here. The trial court made clear it had simply made a mistake in announcing the verdict in court by failing to state it had also found Marmillion guilty of the delivery charge. As this Court has stated:

> A court has no authority to change a previously recorded guilty verdict if the change is based on a post-verdict factual redetermination. It is well-settled, however, that a court possesses the inherent power to correct clerical errors appearing either in the record or in its orders. Moreover, the power to correct errors extends to improperly recorded verdicts; thus, a court may correct a recorded verdict if the verdict does not reflect the obvious intention of the trier of fact.

***Commonwealth v. Williams***, 519 A.2d 971, 973 (Pa. Super. 1986) (citations omitted).

The trial court here explicitly stated that the verdict it read in open court did not represent its intention to find Marmillion guilty of delivery of a controlled substance. Upon realizing that, the trial court quickly notified counsel and corrected its mistake in the written verdict to reflect its original intention to find Marmillion guilty of the delivery charge, and that written verdict was the verdict that was docketed the following day. As the trial court stated in its opinion, the court's intentions to find Marmillion guilty of the delivery charge was also reflected in the record:

> Besides [the court's] own statement of [its] intentions, perhaps the best indication of [the court's] intention to find [Marmillion] guilty of delivery may be found during a discussion near the end of trial between counsel and [the court] regarding the Commonwealth's request to call a witness. [***See*** N.T., 4/20/2022, at 96-99]. The court stated [at that time] that, based on what [the court had] heard so far, the Commonwealth's case [was] pretty much [complete, and] [t]here [didn't] seem to be much in dispute about the administration of something intranasally by

- 15 -

[Marmillion]. … [A]t that point [in the trial, the court thought] that all the witnesses ha[d] established that [Marmillion did what [the Commonwealth] said she did [and the] question [remaining was whether the intranasal injection of the fentanyl] kill[ed] [Richardson?] [*See id.* at 96, 99].

Trial Court Opinion, 1/3/2023, at 10-11.

Given this record, the trial court's opinion and the circumstances of this case, we simply do not agree with Marmillion that the court's correction of its mistake so that the written verdict reflected its intended verdict was improper. *See Williams,* 519 A.2d at 973; 42 Pa. C.S.A. § 5505 (stating that except where otherwise provided or prescribed by law, a court may modify or rescind an order within 30 days of its entry if no appeal has been taken). No relief is due.

Next, Marmillion complains the trial court erred by convicting her of the delivery of a controlled substance charge essentially because this verdict was inconsistent with the court's determination that Marmillion's actions had not caused Richardson's death. This claim fails.

Again, as an initial matter, it is arguable this claim is also waived for not being properly raised in Marmillion's Rule 1925 statement. As noted above, Marmillion's statement only generally challenged the propriety of the delivery conviction. It did not mention anything about inconsistent verdicts. *See* Pa.R.A.P. 1925(b)(4)(ii), (vii).

Even if the claim were properly before this Court, we would find there is no merit to Marmillion's claim that the trial court erred by convicting her of

- 16 -

the delivery charge after finding the evidence was insufficient to find she had caused Richardson's death. Of course, as Marmillion acknowledges, inconsistent verdicts are allowed in this Commonwealth. *See Commonwealth v. Jordan*, 256 A.3d 1094, 1107 (Pa. 2021). In any case, the trial court was clear it found the Commonwealth had established that Marmillion injected fentanyl up Richardson's nose but that the Commonwealth had not established the fentanyl had been what caused Richardson's death. The trial court therefore found Marmillion guilty of the delivery charge, but not guilty of the death-related charges. Marmillion does not explain, and we fail to see, how these verdicts are even inconsistent.

In her third claim, Marmillion argues she was entitled to immunity under the Drug Overdose Response Immunity Act ("the Act"), 35 P.S. § 780-113.7. This claim also fails.

The Act provides immunity from prosecution for possessory narcotics infractions when a person has a reasonable belief someone is experiencing a drug overdose and contacts local authorities. *See Commonwealth v. Lewis*, 180 A.3d 786, 787-788 (Pa. Super. 2018). The Act provides this immunity to both the reporter and the overdose victim, as long as the following conditions are met:

> (i)     The person reported, in good faith, a drug overdose event to a law enforcement officer, the 911 system, a campus security officer or emergency services personnel and the report was made on the reasonable belief that another person was in need of immediate medical

> attention and was necessary to prevent death or serious bodily injury due to a drug overdose.
>
> (ii)     The person provided his own name and location and cooperated with the law enforcement officer, 911 system, campus security officer or emergency services personnel; and
>
> (iii)    The person remained with the person needing immediate medical attention until a law enforcement officer, a campus security officer or emergency services personnel arrived.

35 P.S. § 780-113.7.

Therefore, under the Act, when a person reports a drug overdose in good faith, "immunity is only granted when the reporter reasonably believes medical attention is necessary [and] … provide[s] authorities with her real name, [stays] with the subject of her report, and [ ] cooperate[s] fully with authorities." *Lewis*, 180 A.3d at 790. It is the defendant who carries the burden of proof to establish she is entitled to immunity under the Act. *See Commonwealth v. Lehman*, 231 A.3d 877 (Pa. 2020).

As an initial matter, we note the Act does not provide immunity to Marmillion for her delivery of a controlled substance charge or her REAP charge. This is because the Act provides immunity for only certain, specifically-enumerated offenses as well as probation and parole violations, and those offenses do not include delivery of a controlled substance or REAP. *See* 35 P.S. § 780-113.7 (d)(2) (stating "[t]his section may not interfere with or prevent the investigation, arrest, charging or prosecution of a person for

the delivery or distribution of a controlled substance … or any crime not listed in subsection (b)"); 35 P.S. § 780-113.7(b) (listing offenses).

Even though the Act potentially provides immunity for Marmillion's possession of a controlled substance charge, she has failed to establish the trial court erred by failing to grant her immunity for that offense under the Act. The trial court found that the reporting of Richardson's overdose had not been made in good faith because Marmillion's cohorts waited at least 30 minutes to call 911. Marmillion responds to that finding by stating she did not act in bad faith because she did not provide eutylone to Richardson. *See* Appellant's Brief at 19.

While that argument is neither responsive nor persuasive, Marmillion's attempt to invoke immunity under the Act suffers from a more glaring issue in that she completely fails to meet her burden of establishing she fully cooperated with authorities. The only support Marmillion provides for her argument that she complied with the statutory mandate to cooperate with law enforcement is a single conclusory assertion that she "cooperated with law enforcement." *Id.* She provides no further argument and no evidence to substantiate that assertion. And, in fact, our review of the record indicates the exact opposite occurred. In response to a question about whether people were forthcoming in their initial interviews at the scene, Officer Shiposh stated:

> At first, no, not at all. I mean, we – when we were on scene basically everybody denied everything. Um, as the day progressed, the truth – parts of the truth started to come out. Um, at first – at first there was little to no cooperation. We slowly

- 19 -

gained somewhat cooperation, I guess, if you will, throughout the day. Um, all the, uh [Marmillion] and the co-defendants were extremely high, even hours after the fact. Um, it was really hard to get anything out of them.

N.T., 4/21/2022, at 32.

Officer Shiposh then confirmed this lack of cooperation on cross-examination:

Q: [They] cooperated with law enforcement?

A: No, that's not true.

Q: They didn't cooperate with law enforcement?

A: No.

Q: They didn't tell you that she died of an overdose?

A: Not at first, no.

Q: Okay.

A: It took a lot of prying to get the truth from them.

*Id.* at 73.

This testimony clearly undermines Marmillion's bald assertion she cooperated with law enforcement, and she does not point to any other place in the record which shows she was forthright and cooperative. We further note that Marmillion does not dispute she did not call 911 or speak to 911. Instead, Marmillion baldly alleges she told the others to call 911, but she does not point to any support in the record to substantiate that assertion either. Moreover, it is undisputed that Marmillion did not reveal the full extent of her attempts to treat Richardson to the authorities. While the Commonwealth does not

argue and there is no evidence in the record to support a finding that this failure contributed to Richardson's death, we note that full cooperation includes, at the very least, communication of any other treatments administered to the victim. In the end, Marmillion has simply failed to meet her burden of showing she has met all of the conditions required under the Act for granting immunity. We therefore find, albeit for different reasons, that the trial court did not err in finding the Act was not applicable to Marmillion. *See Commonwealth v. O'Drain*, 829 A.2d 316, 321 n.7 (Pa. Super. 2003)(stating this Court may affirm the trial court's decision on a different basis than that relied upon by the trial court).

In her fourth claim, Marmillion asserts the "trial court erred in denying [her] post-sentence motions." Appellant's Brief at 3, 20. This claim is waived.

Inside this claim in her argument section, Marmillion asserts she is challenging the sufficiency of the evidence of the delivery charge. Again, Marmillion did not properly raise this issue in her Rule 1925(b) statement and it is waived for that reason. While generally challenging the delivery conviction and the denial of her post-sentence motion in her statement, Marmillion did not mention the sufficiency of the evidence of the delivery conviction as a basis for those challenges, much less identify which elements of the offense she was asserting the Commonwealth did not prove. *See* Pa. R.A.P. 1925(b)(4)(ii), (vii); *Commonwealth v. Williams*, 959 A.2d 1252, 1257-1258 (Pa. Super. 2008) (stating that a sufficiency claim is waived if the Rule

1925 statement fails to articulate the specific elements of the crime which the appellant is challenging as having been insufficiently proven, and regardless of whether the trial court addressed the issue).

Marmillion's final claim is a challenge to the trial court's decision not to merge her possession of a controlled substance sentence with her delivery of a controlled substance sentence. This last claim also does not offer Marmillion any basis for relief.

In arguing this claim, Marmillion cites to law regarding merger and acknowledges that crimes will only merge for sentencing purposes when the crimes arise from a single criminal act and all the statutory elements of one offense are included in the statutory elements of the other offense. *See* Appellant's Brief at 23 (*citing* [42] Pa. C.S.A. § 9765; *Commonwealth v. Jenkins*, 96 A.3d 1055, 1056 (Pa. Super. 2014)). She cites case law standing for the proposition that delivery of a controlled substance includes possession of that controlled substance and then states:

> Here, [Marmillion] must have possessed the illegal drug/controlled substance [i.e., fentanyl] in order to deliver it. Possession of a drug/controlled substance [i.e., fentanyl] is, in fact, a necessary prerequisite to Delivery of a Controlled Substance.

Appellant's Brief at 23-24.

This sparse argument does nothing to address the trial court's conclusion that the two offenses did not merge in this particular case because they did not arise from a single criminal act. To that end, the trial court explained:

> [E]ven if the elements of possession are found within the elements of delivery, two convictions only merge for purposes of sentencing if they arise from a single criminal act. In this case, there was sufficient evidence to support the conclusion that [Marmillion] was guilty of delivery of fentanyl when she injected that drug up Ms. Richardson's nose, and guilty of possession of different amounts of fentanyl and other drugs based on the numerous drugs that were contained within the hotel room, at least some of which she was directly possessing and using or which were constructively possessed.

Trial Court Opinion, 1/3/2023, at 15 (citations omitted).

We add that Officer Shiposh testified police recovered multiple drugs on Marmillion's person, and that the information charged Marmillion with delivery of fentanyl but possession of other controlled substances in addition to the fentanyl. We find no error in the court's conclusion, and Marmillion makes no attempt to argue otherwise. No relief is due.

Finally, we must address Marmillion's request for this Court to publish this decision. We see no reason not to grant that request.

Judgment of sentence affirmed. Request for Publication granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/13/2023

- 23 -