J-A20002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MINDYN LYNN MARMILLION | : | |
| | : | |
| Appellant | : | No. 99 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 13, 2022
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000367-2021

BEFORE: PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED NOVEMBER 12, 2024**

This case returns to us from the Pennsylvania Supreme Court for reconsideration after we affirmed the Judgment of Sentence on January 18, 2024. Mindyn Lynn Marmillion appealed from the judgment of sentence imposed by the Bradford County Court of Common Pleas after it found Marmillion guilty of delivery of a controlled substance, possession of a controlled substance, and recklessly endangering another person ("REAP") following a bench trial. The convictions stemmed from an incident at the Best Western Hotel in Sayre, Pennsylvania on January 10, 2021, which resulted in the death of Ashley Richardson from a drug overdose. Although Marmillion was also charged with several offenses requiring a showing that Marmillion

---

[*] Former Justice specially assigned to the Superior Court.

had caused Richardson's death, including third-degree murder and drug delivery resulting in death, the trial court dismissed those counts at the close of the Commonwealth's case in chief.

On appeal to this Court, Marmillion raised five issues. She claimed the trial court improperly convicted her of delivery of a controlled substance for several reasons, but most importantly, because the court omitted rendering the guilty verdict for that particular offense in open court at the end of trial. She also argued she was entitled to immunity under the Drug Overdose Response Immunity Act, 35 P.S. § 780-113.7, and that the trial court should have merged the possession of a controlled substance conviction with the delivery of a controlled substance conviction for sentencing purposes.

On direct appeal, we affirmed the judgment of sentence. However, on October 1, 2024, the Pennsylvania Supreme Court remanded the case back to the Superior Court with the following directions:

> **AND NOW**, this 1st day of October, 2024, the petition for allowance of appeal is **GRANTED**, the order of the Superior Court is **VACATED**, and the matter is **REMANDED** to the Superior Court for reconsideration in light of **Commonwealth v. Chambers**, 310 A.3d 76 (Pa. 2024).

Order, 2024 WL 4354023, at *1 (Pa. filed Oct. 1, 2024).

A thorough recitation of the underlying facts was provided in our earlier decision filed on December 13, 2023. **See Commonwealth v. Marmillion**, 306 A.3d 936, 939-41 (Pa. Super. 2023), *vacated by*, ___ A.3d ___, 2024 WL 4354023 (Pa. filed Oct. 1, 2024). We provide only the following pertinent facts

- 2 -

necessary for our disposition. The Commonwealth rested its case at the close of Officer Casey Shiposh[1] of the Sayre Borough Police Department's testimony. At that point, Marmillion moved for dismissal on several of the charges, including the third-degree murder, delivery resulting in death and involuntary manslaughter charges, on the basis of insufficient evidence. Marmillion argued the Commonwealth had not met its burden of proving Marmillion caused Richardson's death because it had not established whether the eutylone, which Richardson took voluntarily, or the fentanyl, which had been administered intranasally, had killed Richardson.

The trial court agreed and found the Commonwealth had established that Marmillion administered fentanyl to Richardson intranasally, albeit in "an ill-advised attempt to reverse the effects of the eutylone," and that there had been no evidence that Richardson had otherwise ingested fentanyl. Trial Court Opinion, 1/3/2023, at 5 n.2, 8. However, the court also found the Commonwealth had not established that the fentanyl, as opposed to the eutylone, which Richardson ingested voluntarily, had caused Richardson's death.

In making this determination, the court noted it could only consider the testimony of the two Commonwealth expert witnesses, Dr. Robert

---

[1] Officer Shiposh was the responding officer who observed Richardson on the floor not breathing and recovered the drugs on Marmillion's person and in the hotel room. *See* N.T 4/21/2022, at 11-30.

Stoppacher, who performed the autopsy on Richardson, and Donna Papsun, the toxicologist who had analyzed Richardson's blood, because Dr. William Cox, who opined that the eutylone was the primary factor in Richardson's death, was a defense witness and had testified out of order. When considering the Commonwealth's experts' testimony, the court stated that the only thing that was certain about the cause of Richardson's death was that the experts "could not say with any certainty at all that the fentanyl caused the death. That was one thing that was very clear. I can say with no certainty at all that the fentanyl caused the death." N.T., 4/21/2022, at 83. It therefore dismissed the three charges related to Marmilion's administration of the fentanyl as the cause of Richardson's death: third-degree murder, drug delivery resulting in death and involuntary manslaughter.

The defense announced that Marmillion was not going to testify, and therefore rested its case at that point, reminding the trial court of Dr. Cox's earlier testimony.

The attorneys then presented their closing arguments. *Id*. at 89–98. The trial court addressed the remaining charges against Marmillion and stated on the record that it had found Marmillion guilty of REAP and possession of a controlled substance but not guilty of the other charges:

> [I] do want to indicate that the . . . Drug Overdose Response Immunity Act I don't think is applicable. Not because the parties didn't do something, but there is a good faith requirement there. I read good faith to mean timely. The mistake all – this whole entire group made was trying to save Ashley by themselves, and, . . .911 should have been called, in my view, sooner.

> [I]n terms of the rest of the charges, I find the Defendant guilty of Recklessly Endangering Another Person and Possession of a Controlled Substance. The other charges, I find the Defendant not guilty of. Alright? So we'll schedule sentencing for June 13 at 1:45 p.m.

*Id*. at 98–99. Following a few comments by the court, the trial was adjourned at 11:46 a.m.

Approximately two hours later, at 1:59 p.m., the trial court had an on-the-record conversation with the prosecutor and defense counsel:

> I owe you both an apology because I made what I view as a pretty big oversight in saying the—the verdict. .. As I was dictating the order of what transpired and I listed the three charges that I found [Marmillion] guilty of, I had a flashback and thought, "I don't think I said she was guilty of delivery." … [T]here's no change in my mind here. This was just an oversight. She will be found and is guilty of the delivery, of [REAP] and of the possession… It's kind of essential that she be guilty of [the delivery of a controlled substance charge] to go along with the [REAP] charge. It just wouldn't make any sense. .. The order that goes down will simply say that she is guilty of [possession, REAP and delivery of a controlled substance].

*Id.* at 102.

The written order and verdict filed later did, in fact, state that Marmillion had been found guilty of delivery of a controlled substance, REAP and possession of a controlled substance. The order made a note that the court had inadvertently omitted the finding of guilty for the delivery charge in open court at the end of trial but upon realizing its mistake shortly thereafter, notified counsel of the mistake and its intent to find Marmillion guilty of the delivery charge. The order also explained that it had partially granted

Marmillion's motion for dismissal as to all counts that required the Commonwealth to prove Marmillion caused the death of Richardson, reasoning that neither of the Commonwealth medical experts were able to testify that the fentanyl caused Richardson's death to the exclusion of the eutylone. *See* Order and Verdict, 4/21/22, at ¶¶ 1, 2-4.

On June 13, 2022, the trial court held a sentencing hearing, after which it sentenced Marmillion to two to eight years' imprisonment for the delivery of a controlled substance conviction, 11 months to two years' incarceration for the REAP conviction, and four months to one year for the possession conviction. The court ordered the sentences to run consecutively, so that Richardson's aggregate sentence amounted to 3 years and 3 months to 11 years' imprisonment.

Marmillion filed a timely post-sentence motion on June 17, 2022. The trial court held a hearing on the motion on August 24, 2022, and established a briefing schedule for the parties. In relation to the argument raised by defense counsel that the trial court had stated in open court that it had found the defendant not guilty of the charge delivery of a controlled substance, the trial court stated:

> [I] really don't have a whole lot more to say on this beyond what I said when I called the parties that day. But, I would emphasize that **this was not a reconsideration situation** where, upon further reflection, I wanted to change my mind. As I explained that day, and I'll repeat again today, when I went back over lunch to dictate the order and I dictated the Defendant being found guilty of the three charges that I, in my mind, found her guilty of, had a sort of sickening feeling that I didn't say out-loud the

delivery conviction. . . .[A]nd then I very quickly tried to get both of you on the phone, it took probably half an hour to track down Mr. Light and when we did that I then explained that I just made a mistake.

And, to be honest, what I did was I had the information in front of me and when I glanced at the front page of the information, the delivery charge is at count 4 and it's in between all the rest of the bodily injury charges, . . . the death, the homicide, the assault, and I just flipped over it. When I came back into the courtroom and read the two on the second page, . . . it was my mistake, it was a bad mistake, I feel upset that I didn't create a written verdict slip which would have eliminated this mistake, because I would have filled it out correctly and then just read from it. The problem was, when I went back after the trial ended, the only thing I really looked at was that immunity statute, because I knew what I was going to do with the charges if the immunity statute didn't apply, and then I just came back and just didn't do it.

[A]nd so that's my mistake and I think in Mr. Light's brief he cites a case, ***Commonwealth v. Feranella***, and that's a situation where, I read that case, and it's very clearly a very different situation. There it was a bench trial and before sentencing the judge wrote in his opinion that based upon "extensive" review of the notes of testimony in advance of the sentencing hearing, he realized he got it wrong. **And, that's just not the case here . . . .**

It's an interesting issue but it was simply a mistake on my part. [I] don't think we [] have anything else then. Mr. Light, do we have anything else?

***See*** N.T., 8/24/2022, at 15-17 (emphasis added; paragraphing provided).

The trial court ultimately denied the motion on January 3, 2023. Along with its order, the trial court issued a thoughtful and well-reasoned opinion explaining its reasons for denying the post-sentence motion.

- 7 -

Marmillion filed a notice of appeal on January 13, 2023, and complied with the trial court's order directing her to file a Pa. R.A.P. 1925(b) statement of errors complained of on appeal. Her statement read:

1. Did the Trial Court err in failing to grant her Judgment of Acquittal on Delivery of a Controlled Substance pursuant to 35 P.S. § 780-113(A)(30)?

2. Did the Trial Court err in failing to grant [Marmillion's] Motion and Arrest for Judgment under the Drug Overdose Response Immunity Act?

3. Did the Trial Court err in failing to grant the merger of Possession of a Controlled Substance and Delivery of a Controlled Substance?

Concise Statement of Errors Complained of on Appeal, 1/25/2023, at 1-2.

The trial court filed a statement in lieu of a Rule 1925(a) opinion, referring this Court to its January 3, 2023, opinion as support for affirming the judgment of sentence. As previously stated, this Court affirmed the judgment of sentence on December 13, 2023, and, on October 1, 2024, the Pennsylvania Supreme Court vacated our January 18, 2024 decision and remanded for reconsideration based on **Chambers**.

As we did in our initial decision, we find that this appeal was filed timely.

In her first issue, Marmillion complains the trial court erred by finding her guilty of delivery of a controlled substance in its written verdict after it failed to make that finding when announcing its verdict in open court at the end of trial. As stated earlier, the trial court, prior to filing the written verdict, held an on-the-record conference with counsel during which it informed

counsel that it had rendered an incorrect verdict on the delivery charge and was reforming the verdict to be guilty on delivery. We affirmed. \However, as stated above, our Supreme Court vacated our earlier decision and remanded the case on this issue.

In **Commonwealth v. Chambers**, 310 A.3d 76 (Pa. 2024), the Supreme Court of Pennsylvania stated: "The law is clear that, once a verdict is rendered, a court's authority to alter that verdict is severely circumscribed." **Id**. at 91. The Supreme Court followed that announcement with the process to correct an ambiguous (which doesn't apply here) or a mistaken (which does apply here) verdict. Upon completion of a bench trial, an error in the verdict "typically . . . must be corrected immediately, lest the authority to fix the error be lost forever. Thus, for example, if a trial court misspeaks, but corrects that misstatement seconds later, the court has run afoul of no law." **Id**.

The Supreme Court also recognized that an obvious and indisputable clerical or transcription error can be corrected, but neither applies here. The verdict here, announced in open court, was not flawed in any fashion that would have relegated it to attack; therefore, as cited by the Supreme Court in **Chambers**, the holding in **Commonwealth v. Farinella**, 887 A.2d 273 (Pa. Super. 2005), prohibited any alteration in the case's verdict.[2]

---

[2] The trial court in a nonjury setting cannot change a proper verdict made in open court that was not ambiguous even in the face of a statement by the
*(Footnote Continued Next Page)*

Of course, the trial court here did not attempt to alter the verdict which it announced in court, in the presence of the parties, solely by way of a written verdict issued later in the day. As stated above, the trial court conscientiously alerted counsel, and organized an on-the-record phone conference, about two hours after the verdict had been initially rendered in open court. The steps taken by the trial court, as well as our earlier decision, were also made prior to the Supreme Court's decision in **Chambers**. The trial court further explained in its post-sentence decision that its comments regarding the evidence supported the finding of guilt on the delivery charge. **See**, Trial Court Opinion, 1/3/2023, at 10-11.

These detailed steps taken by the trial court were truly commendable. Nevertheless, the trial court's reversal of the finding of guilt for the delivery charge did not come until later in the day. It was not an immediate correction in open court with the parties present. It was not the result of a motion by either party. "That the trial court may have privately intended a different verdict, or that its findings would have supported that different verdict, are insufficient to justify its actions." **Chambers**, 310 A.3d at 92. We do not challenge, in any way, the trial court's strong and unequivocal statements that it mistakenly entered the wrong verdict on the delivery charge, but "[e]ven

---

trial court that "it was merely correcting an error in the pronouncement of the verdict." **Farinella**, 887 A.2d at 275-76.

where a court's intention to render a different verdict is unquestionable and obvious, that intent is relevant only to correct a patently obvious clerical or transcription error in connection with the recording of that verdict. Merely expressing that the court meant or intended something else is insufficient to satisfy the 'heavy burden' necessary to allow a verdict to be substituted." *Id*.

Based on the foregoing, we are constrained to reverse the conviction for delivery of a controlled substance and vacate the judgment of sentence on that conviction.

In her second claim, Marmillion argues she was entitled to immunity under the Drug Overdose Response Immunity Act ("the Act"), 35 P.S. § 780-113.7. We decide this issue consistently with our prior decision. As we found in our initial decision, this claim fails.

The Act provides immunity from prosecution for possessory narcotics infractions when a person has a reasonable belief someone is experiencing a drug overdose and contacts local authorities. *See Commonwealth v. Lewis*, 180 A.3d 786, 787-788 (Pa. Super. 2018). The Act provides this immunity to both the reporter and the overdose victim, as long as the following conditions are met:

> (i) The person reported, in good faith, a drug overdose event to a law enforcement officer, the 911 system, a campus security officer or emergency services personnel and the report was made on the reasonable belief that another person was in need of immediate medical attention and was necessary to prevent death or serious bodily injury due to a drug overdose.

- 11 -

(ii) The person provided his own name and location and cooperated with the law enforcement officer, 911 system, campus security officer or emergency services personnel; and

(iii) The person remained with the person needing immediate medical attention until a law enforcement officer, a campus security officer or emergency services personnel arrived.

35 P.S. § 780-113.7.

Therefore, under the Act, when a person reports a drug overdose in good faith, "immunity is only granted when the reporter reasonably believes medical attention is necessary [and] … provide[s] authorities with her real name, [stays] with the subject of her report, and [ ] cooperate[s] fully with authorities." Lewis, 180 A.3d at 790. It is the defendant who carries the burden of proof to establish she is entitled to immunity under the Act. **See Commonwealth v. Lehman**, 231 A.3d 877 (Pa. 2020).

Even though the Act potentially provides immunity for Marmillion's possession of a controlled substance charge, she has failed to establish the trial court erred by failing to grant her immunity for that offense under the Act. The trial court found that the reporting of Richardson's overdose had not been made in good faith because Marmillion's cohorts waited at least 30 minutes to call 911. Marmillion responds to that finding by stating she did not act in bad faith because she did not provide eutylone to Richardson. **See** Appellant's Brief at 19.

While that argument is neither responsive nor persuasive, Marmillion's attempt to invoke immunity under the Act suffers from a more glaring issue

in that she completely fails to meet her burden of establishing she fully cooperated with authorities. The only support Marmillion provides for her argument that she complied with the statutory mandate to cooperate with law enforcement is a single conclusory assertion that she "cooperated with law enforcement." *Id.* She provides no further argument and no evidence to substantiate that assertion. And, in fact, our review of the record indicates the exact opposite occurred. In response to a question about whether people were forthcoming in their initial interviews at the scene, Officer Shiposh stated:

> At first, no, not at all. I mean, we – when we were on scene basically everybody denied everything. Um, as the day progressed, the truth – parts of the truth started to come out. Um, at first – at first there was little to no cooperation. We slowly gained somewhat cooperation, I guess, if you will, throughout the day. Um, all the, uh [Marmillion] and the co-defendants were extremely high, even hours after the fact. Um, it was really hard to get anything out of them.

N.T., 4/21/2022, at 32.

Officer Shiposh then confirmed this lack of cooperation on cross-examination:

Q: [They] cooperated with law enforcement?

A: No, that's not true.

Q: They didn't cooperate with law enforcement?

A: No.

Q: They didn't tell you that she died of an overdose?

A: Not at first, no.

Q: Okay.

A: It took a lot of prying to get the truth from them.

*Id.* at 73.

This testimony clearly undermines Marmillion's bald assertion she cooperated with law enforcement, and she does not point to any other place in the record which shows she was forthright and cooperative. We further note that Marmillion does not dispute she did not call 911 or speak to 911. Instead, Marmillion baldly alleges she told the others to call 911, but she does not point to any support in the record to substantiate that assertion either. Moreover, it is undisputed that Marmillion did not reveal the full extent of her attempts to treat Richardson to the authorities. While the Commonwealth does not argue and there is no evidence in the record to support a finding that this failure contributed to Richardson's death, we note that full cooperation includes, at the very least, communication of any other treatments administered to the victim. In the end, Marmillion has simply failed to meet her burden of showing she has met all of the conditions required under the Act for granting immunity. We therefore find, albeit for different reasons, that the trial court did not err in finding the Act was not applicable to Marmillion. *See Commonwealth v. O'Drain*, 829 A.2d 316, 321 n.7 (Pa. Super. 2003) (stating this Court may affirm the trial court's decision on a different basis than that relied upon by the trial court). Therefore, this claim does not merit relief.

Considering our reversal of her conviction of the delivery charge, there is no need to review Marmillion's arguments regarding the sufficiency of the evidence of the delivery charge, or her challenge to the trial court's decision not to merge her possession of a controlled substance sentence with her delivery of a controlled substance sentence.

In sum, we reverse the conviction on the delivery of a controlled substance charge and vacate the judgment of sentence on this charge. We affirm the judgment of sentence for possession of a controlled substance and recklessly endangering another person ("REAP"). Because our disposition alters and affects the trial court's overall sentencing scheme, we vacate the entire judgment of sentence and remand for resentencing. ***See Commonwealth v. Bartrug***, 732 A.2d 1287, 1289 (Pa. Super. 1999) (holding sentencing error on one count in multi-count case normally requires appellate court to vacate entire judgment of sentence so trial court can restructure its sentencing plan on remand).

Judgment of sentence vacated. Case remanded to the trial court for a new sentencing hearing consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/12/2024