J-A22005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CLIFFORD E. WILSON | : | |
| | : | |
| Appellant | : | No. 931 WDA 2023 |

Appeal from the Judgment of Sentence Entered June 1, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0009579-2021

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY MURRAY, J.:              **FILED: November 7, 2024**

Clifford E. Wilson (Appellant) appeals from the judgment of sentence imposed following his non-jury conviction of two counts of driving under the influence (DUI) – controlled substance and one count of possession of drug paraphernalia.[1]  After careful review, we affirm.

On July 21, 2021, at approximately 8:50 p.m., Lawrence Wiest (Mr. Wiest), a fire department paramedic, called 911 to report a suspected overdose.  N.T., 4/27/23, at 19; Criminal Complaint, 12/21/21.  Mr. Wiest reported that a vehicle had crashed into a fence, and the driver was unconscious.  Criminal Complaint, 12/21/21.  Sharpsburg Borough Police

---

[1] 75 Pa.C.S.A. § 3802(d)(1) and (d)(2); 35 P.S. § 780-113(a)(32).

Officer Brett Carb (Officer Carb) responded to the dispatch. N.T., 4/27/23, at 6-7.

> The vehicle in question was located along Main Street and had driven into a construction fence. Main Street was busy at that time and location. Video showed numerous vehicles going past the scene. The sole occupant, [Appellant], was unconscious in the driver's seat. [Mr. Wiest advised Officer Carb that Appellant displayed agonal breathing, and that he suspected Appellant had overdosed. Criminal Complaint, 12/21/21; **see also** Commonwealth's Exhibit 1A.]

> Two (2) doses of Narcan were administered to [Appellant]. These were given to him by [Mr. Wiest], a paramedic with the fire department who was on scene when Officer Carb arrived. [Mr. Wiest] indicated that [he] had turned off the engine and put [Appellant's] vehicle in park before Officer Carb got there. [Appellant] regained consciousness after the second dose [of Narcan].

> [Appellant] told the officer that he had been at the Auto Zone in the neighboring community of Etna and was going to his home in Sharpsburg. That store is a four- or five-minute drive from where the vehicle was located. [Appellant] reported no medical conditions that could have explained the circumstances. [Appellant] spoke with the paramedics on scene for several minutes before he agreed to go to the hospital for treatment.

> Officer Carb observed that [Appellant] was speaking in a low, raspy voice, had droopy eyelids, and was unsteady as he walked from the car to a waiting stretcher for transport to a local hospital. Based on his observations, the effect of the Narcan, and the collision with the fence, Officer Carb formed the opinion that [Appellant] was incapable of safely operating a motor vehicle.

> [Appellant's] car was not legally parked and was going to be towed from the scene. After [Appellant] was in the ambulance and set for transport to the hospital, Officer Carb conducted an

inventory search of the vehicle prior to towing it. An empty stamp bag[2] was recovered in the gear shifter.

Officer Carb then went to meet [Appellant] at [the hospital].... Officer Carb described [Appellant] as coherent and responding to questions in an appropriate manner. [Appellant] was read the DL-26 [informed consent] form and signed it after appearing to have no difficulty understanding Officer Carb.

[Appellant's] blood was collected and tested positive for fentanyl.

Trial Court Opinion, 10/23/23, at 2-3 (unnumbered) (footnote added).

The Commonwealth charged Appellant, via criminal information, with three counts of DUI – controlled substances, and one count each of DUI – general impairment[3] and possession of drug paraphernalia.

On March 3, 2023, Appellant filed an omnibus pre-trial motion which included, *inter alia*, a motion to quash the charge of possession of drug paraphernalia. Appellant argued he is immune from prosecution under the Drug Overdose Response Immunity Act (the Act), 35 P.S. § 780-113.7. After a hearing, the trial court denied Appellant's omnibus pre-trial motion. Pertinently, the court concluded Appellant was not entitled to immunity under the Act because Officer Carb discovered the drug paraphernalia during a

---

[2] During the pre-trial motion hearing, Officer Carb testified that a stamp bag is a small glycine packet, which is commonly used to package heroin. N.T., 4/27/23, at 13.

[3] 75 Pa.C.S.A. § 3802(a)(1), (d)(3).

- 3 -

standard inventory search of Appellant's vehicle. *See* Trial Court Opinion, 10/23/23, at 4 (unnumbered).

The case proceeded to a non-jury trial on June 1, 2023. At the start of trial, the Commonwealth withdrew the charges of DUI – general impairment and DUI – controlled substance (combination of alcohol and drugs). The trial court convicted Appellant of two counts of DUI – controlled substance and one count of possession of drug paraphernalia. On the same date, the trial court sentenced Appellant to an aggregate of 4 days in the DUI alternative to jail program and six months' probation, and imposed $1,000 in fines.

Appellant filed a timely post-sentence motion on June 12, 2023, challenging the sufficiency and weight of the evidence. On July 18, 2023, the trial court held a hearing on the post-sentence motion. At the close of the hearing, the trial court denied Appellant's motion.

This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue for review:

> In refusing to quash the charge of possession of drug paraphernalia, whether the trial court erred in concluding that [Appellant] was not entitled to immunity pursuant to the [Act]?

Appellant's Brief at 5 (some capitalization modified).

Appellant claims he was entitled to immunity under the Act because Officer Carb found the drug paraphernalia as a result of his response to the 911 call. *Id.* at 22; *see also id.* at 23 ("[T]he officer's entry and search of

[Appellant's] car were not wholly unrelated to [Appellant's] drug overdose event."). According to Appellant, because Appellant denied taking any drugs, Officer Carb had a responsibility to identify the drugs Appellant had taken. *Id.* at 23. Appellant argues Officer Carb found the paraphernalia while emergency personnel were still rendering assistance on site. *Id.* at 24.

The Commonwealth counters that Officer Carb found the paraphernalia in the course of an inventory search. Commonwealth Brief at 14; *see also id.* (arguing that Appellant's car was illegally parked following the accident, and police were required to tow the vehicle). The Commonwealth asserts that Appellant was not entitled to immunity because the inventory search "was a course of conduct independent of and separate from the medical measures taken concerning [Appellant's] overdose…." *Id.* at 15. According to the Commonwealth, "the mere fact that police were present at the same time that [A]ppellant was being treated for an overdose does not equate to an automatic grant of immunity." *Id.* at 18.

Appellant's issue involves the interpretation and application of the Act. Our standard of review is well settled:

> A trial court's application of a statute is a question of law, and our standard of review is plenary. Moreover, our review is limited to determining whether the trial court committed an error of law. In interpreting any statute, appellate courts must take note of the principles of statutory interpretation and construction. The principal objective of interpreting a statute is to effectuate the intention of the legislature and give effect to all of the provisions of the statute. In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be

read according to the plain meaning of the words. When analyzing particular words or phrases, we must construe them according to the rules of grammar and according to their common and approved usage. Words of a statute are to be considered in their grammatical context. Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute. A presumption also exists that the legislature placed every word, sentence and provision in the statute for some purpose and therefore courts must give effect to every word.

*Commonwealth v. Lewis*, 180 A.3d 786, 788 (Pa. Super. 2018) (citations and quotation marks omitted).

The Act was promulgated "[i]n an effort to prevent overdose deaths," *Lewis*, 180 A.3d at 787, and provides, in relevant part:

(a) A person may not be charged and shall be immune from prosecution for any offense listed in subsection (b) and for a violation of probation or parole if the person can establish the following:

(1) law enforcement officers only became aware of the person's commission of an offense listed in subsection (b) because the person transported a person experiencing a drug overdose event[4] to a law enforcement agency, a campus security office or a health care facility; or

---

[4] The Act defines a "drug overdose event" as follows:

An acute medical condition, including, but not limited to, severe physical illness, coma, mania, hysteria or death, which is the result of consumption or use of one or more controlled substances cause an adverse reaction. A patient's condition shall be deemed to be a drug overdose if a prudent layperson, possessing an average knowledge of medicine and health, would reasonably believe that the condition is in fact a drug overdose and requires immediate medical attention.

35 P.S. § 780-113.7(f) (definitions section).

(2) all of the following apply:

(i) the person reported, in good faith, a drug overdose event to a law enforcement officer, the 911 system, a campus security officer or emergency services personnel and the report was made on the reasonable belief that another person was in need of immediate medical attention and was necessary to prevent death or serious bodily injury due to a drug overdose;

(ii) the person provided his own name and location and cooperated with the law enforcement officer, 911 system, campus security officer or emergency services personnel; and

(iii) the person remained with the person needing immediate medical attention until a law enforcement officer, a campus security officer or emergency services personnel arrived.

(b) The prohibition on charging or prosecuting a person as described in subsection (a) bars charging or prosecuting a person for probation and parole violations and for violations of section 13(a)(5), (16), (19), (31), (32), (33) and (37).

(c) Persons experiencing drug overdose events may not be charged and shall be immune from prosecution as provided in subsection (b) if a person who transported or reported and remained with them may not be charged and is entitled to immunity under this section.

(d) The prohibition on charging or prosecuting a person as described in this section is **limited** in the following respects:

(1) This section may not bar charging or prosecuting a person for offenses enumerated in subsection (b) **if a law enforcement officer obtains information prior to or independent of the action of seeking or obtaining emergency assistance** as described in subsection (a).

35 P.S. § 780-113.7(a)-(d)(1) (emphasis and footnote added; footnote omitted). The Act "places the burden on the defendant to establish the Act's

- 7 -

applicability." **_Commonwealth v. Markun_**, 185 A.3d 1026, 1033 (Pa. Super. 2018) (_en banc_).

In general, the Act provides "immunity from prosecution for certain crimes when a person has a reasonable belief someone is suffering from an overdose and contacts local authorities." **_Lewis_**, 180 A.3d at 787-88. If the conditions set forth in the Act are satisfied, immunity may attach to both the reporter and the victim. **_Id._** at 788.

Instantly, the parties do not dispute Mr. Wiest's (the off-duty paramedic who reported the emergency) entitlement to immunity under Section 780-113.7(a), which would give rise to derivative immunity for Appellant under Section 780-113.7(c).[5] **_See Commonwealth v. Carontenuto_**, 148 A.3d at 448, 452-53 (describing immunity for the overdose victim under subsection (c) as derivative of the reporter's entitlement to immunity under subsection (a)). It is also undisputed that possession of drug paraphernalia is an enumerated offense under the Act. **_See_** 35 P.S. § 780-113.7(b). Additionally, the incident was a "drug overdose event."

The sole issue is whether the limiting provision of subsection (d)(1) precludes immunity for Appellant. Returning to the text of the Act, subsection

---

[5] Nevertheless, it is clear from the testimony adduced at the suppression hearing that Mr. Wiest (1) made a good faith report of a drug overdose to an appropriate authority; (2) provided his name and location, and cooperated with law enforcement and emergency responders; and (3) remained with Appellant while paramedics treated him and law enforcement arrived at the scene.

- 8 -

(d)(1) limits the prohibition on charging or prosecuting a drug overdose victim "if a law enforcement officer obtains information prior to or **independent of** the action of seeking or obtaining emergency assistance…." 35 P.S. § 780-113.7(d)(1) (emphasis added). Contrary to Appellant's assertion, the plain language of the Act does not require that the discovery of the incriminating information be "wholly unrelated" to the process of rendering aid in a drug overdose event.[6] "[W]e should not insert words into [a statute] that are plainly not there." **Commonwealth v. Lehman**, 311 A.3d 1034, 1044 (Pa. 2024).

Here, Officer Carb testified he responded to a dispatch concerning an overdose in a vehicle. N.T., 4/27/23, at 6-7. When he arrived on scene, Officer Carb observed the vehicle had hit a fence. **Id.** at 7. Mr. Wiest was still present at the scene. **Id.** Officer Carb identified Appellant as the vehicle's sole occupant. **Id.** at 8.

Officer Carb testified that both he and Mr. Wiest unsuccessfully attempted to awaken Appellant. **Id.** at 9, 19, 21. Mr. Wiest administered two

_____

[6] Our review of caselaw interpreting the Act reveals only one unpublished memorandum involving the applicability of subsection (d)(1), **Commonwealth v. Ohm**, 160 A.3d 265, 922 EDA 2016 (Pa. Super. 2017) (unpublished memorandum). However, because this Court's decision in **Ohm** was issued in 2017, we may not consider it for persuasive value. **See** Pa.R.A.P. 126(b) (providing unpublished non-precedential memorandum decisions of the Superior Court filed **after** May 1, 2019, may be cited for their persuasive value). Even if we could consider the **Ohm** decision, it would be of little assistance, as there was little admissible evidence in the record to aid in review.

doses of Narcan to Appellant. *Id.* at 9, 20. Officer Carb indicated that Appellant did not immediately respond to the Narcan, but he eventually regained consciousness. *Id.* at 20.

Appellant subsequently explained that he was driving home. *Id.* at 10. Appellant indicated that he did not have a history of losing consciousness or any other medical conditions. *Id.* Officer Carb described Appellant as having "slow, raspy speech and droopy eyes, which are consistent with narcotics use." *Id.* at 12; *see also id.* at 10. After several minutes of discussion, Appellant agreed to go to the hospital. *Id.* at 11. According to Officer Carb, Appellant was "very unsteady" while he walked toward the stretcher. *Id.*

Officer Carb testified that the vehicle had to be towed because it was illegally parked and had crashed into a fence. *Id.* at 12. Officer Carb stated that standard procedure is to conduct an inventory search prior to towing a vehicle. *Id.* During an inventory search, police "[c]heck the vehicle for any valuables, anything else, so that there's no -- nothing alleged taken from the vehicle." *Id.* at 12-13. If evidence of a crime is discovered during the search, the evidence is transported to the police station, photographed, and placed in an evidence locker. *Id.* at 13.

Importantly, Officer Carb explained that the determination to tow Appellant's vehicle was made **after** Appellant agreed to go to the hospital. *Id.* at 12. Our review of Officer Carb's body-worn camera recording confirms that Appellant was in the ambulance and under the paramedics' care before

- 10 -

Officer Carb returned to the vehicle and located the stamp bag. *See* Commonwealth's Exhibit 1A (video recording from Officer Carb's body-worn camera, taken at the scene); *see also* N.T., 4/27/23, at 8 (wherein the parties stipulated to the authenticity of the video).

Officer Carb testified that while conducting the inventory search, he observed a stamp bag near the gear shifter. N.T., 4/27/23, at 13. Officer Carb removed the stamp bag from the vehicle and "placed it into evidence[.]" *Id.* at 14.

Appellant relies, in part, on this Court's decision in *Lewis*. In *Lewis*, the defendant called 911 to report that she had overdosed on prescription medication. *Lewis*, 180 A.3d at 788. Police responded to the scene "to assist [the defendant] until an ambulance could arrive." *Id.* "While [the police officer] was assisting [the defendant] in gathering the prescription pills, he observed paraphernalia…." *Id.* On direct appeal, this Court concluded the defendant was entitled to immunity from prosecution on the offense of possession of drug paraphernalia. *Id.* at 791. Appellant specifically refers to the following portion of this Court's decision in *Lewis*:

> [T]he Act is designed to save lives by sacrificing the enforcement of minor narcotics criminal penalties. However, as noted, it does not frustrate larger law enforcement goals. For example, if a narcotics distribution operation were the subject of an extended investigation, the suspects would not receive immunity if they called 911 while police were in the process of entering the building. *See* 35 P.S. § 780-113.7(d)(1). Furthermore, even if police were completely unaware of the narcotics distribution operation, and were summoned to treat an overdose, there would be no immunity granted for distribution charges, firearms

- 11 -

charges, or any other crime not explicitly listed in the Act. *See* 35 P.S. § 780-113.7(d)(2). Thus, the Act in no way constitutes an impediment to the prosecution of organized criminal behavior.

*Lewis*, 180 A.3d at 790. Appellant urges us to apply *Lewis*, asserting that Officer Carb, like the responding officer in *Lewis*, found drug paraphernalia only as a result of his response to a 911 call.

We conclude *Lewis* is readily distinguishable. Significantly, *Lewis* did not involve a challenge under subsection (d)(1), and this Court did not undertake an analysis of the Act's limiting provision. Instead, the *Lewis* decision evaluated the applicability of the Act's immunity provisions on individuals who self-report an overdose. *See id.* at 790-91. The *Lewis* Court also addressed the reasonableness of the defendant's belief that she required immediate medical attention. *See id.* at 791. Thus, the facts and arguments present in *Lewis* exclusively pertained to subsection (a)(2), which is not at issue in the present case.

Moreover, the police officer in *Lewis* found drug paraphernalia while he was in the process of assisting the defendant, before paramedics arrived on the scene. *See id.* at 788. By contrast, Officer Carb discovered the empty stamp bag **after** Appellant was in the ambulance and under the care of paramedics.

On review, we conclude this distinction is dispositive. Appellant correctly states that Officer Carb's presence at the scene was the result of his response to the 911 dispatch. However, Officer Carb did not immediately

observe and seize evidence as part of his response. Officer Carb arrived on scene, spoke with Mr. Wiest, attempted to rouse Appellant (who was unconscious behind the wheel of a vehicle that had driven off the road and into a fence), and oversaw Mr. Wiest's administration of two doses of Narcan. After an ambulance arrived, Officer Carb remained with the vehicle while Mr. Wiest updated the responding paramedics. Appellant regained consciousness, and Officer Carb continued to ask Appellant basic questions and have a conversation with Appellant about going to the hospital. Appellant eventually agreed, walked to the stretcher, and was loaded into the ambulance.

Only then did Officer Carb turn his attention back to the vehicle. Officer Carb and other responding officers discussed the vehicle's location and the need to have it towed. When he returned to the vehicle, Officer Carb promptly observed the stamp bag near the vehicle's gear shift. ***See generally*** Commonwealth's Exhibit 1. Officer Carb proceeded with the inventory search,[7] and a tow truck arrived on scene to remove the vehicle. ***See id.*** The police department's standard procedure dictates that an inventory search

---

[7] Appellant does not dispute that police were authorized to tow his vehicle from the scene, nor does he argue Officer Carb violated proper inventory search procedures. ***See generally Commonwealth v. Lagenella***, 83 A.3d 94, 102 (Pa. 2013) ("An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle.").

must be performed when police determine a vehicle must be towed, regardless of the reason for the initial call to the scene.[8]

We conclude that the inventory search was a police action independent of Officer Carb's response to the call for emergency assistance. Based on the circumstances of this case, we conclude Officer Carb had completed the initial course of action in rendering emergency assistance before starting the inventory search. Therefore, Officer Carb's discovery of drug paraphernalia during the course of an inventory search, was "independent of the action of seeking or obtaining emergency assistance" for purposes of the Act.

Based upon the foregoing, we conclude the limiting provision of subsection (d)(1) applies; Appellant was not immune from prosecution on the drug paraphernalia charge. Thus, Appellant is not entitled to relief on his claim.

_____

[8] We note that in the context of the exclusionary rule, Pennsylvania law permits introduction of evidence obtained through a valid inventory search, as well as improperly obtained evidence that would have inevitably been discovered through a valid inventory search. *See*, *e.g.*, *Commonwealth v. Thompson*, 289 A.3 1104, 1107-10 (Pa. Super. 2023) (noting that a proper inventory search is an exception to the warrant requirement, and concluding an inventory search of the defendant's vehicle was proper where the officer testified the vehicle must be towed based on its obstruction of a commercial business); *Commonwealth v. King*, 259 A.3d 511, 522-23 (Pa. Super. 2021) (concluding that even if the challenged evidence was unlawfully obtained, it would have been discovered during a valid inventory search, where the defendant's vehicle was illegally parked and had to be towed). Though neither the warrant requirement nor the doctrine of inevitable discovery is directly at issue in this case, caselaw in this area supports our conclusion that an inventory search constitutes an independent police action.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/7/2024